Southern Energy Homes, Inc. ("Southern Energy"), appeals from the trial court's order denying its motion to compel arbitration of claims made against it by Letha C. Kennedy, Jeannie M. Kennedy (Letha Kennedy's daughter), and Sandra J. Ford (Letha Kennedy's sister and Jeannie Kennedy's aunt). (The plaintiffs are *Page 542 
sometimes referred to hereinafter collectively as "the Kennedys.") We affirm.
 I.
On March 28, 1996, the Kennedys purchased a mobile home from Jack Lee, doing business as Jack Lee Mobile Homes. That mobile home had been manufactured by Southern Energy. One of the documents executed during the purchase transaction was a document entitled "ALTERNATIVE DISPUTE RESOLUTION AGREEMENT." Jack Lee signed this document in the space provided for the seller's signature, and all three of the plaintiffs signed it in the spaces provided for the buyers' signatures. The names of the parties were not inserted, however, in several blanks in the document, and a blank related to the term "State" was not filled in. The agreement states:
 "THIS ALTERNATIVE DISPUTE RESOLUTION AGREEMENT is entered into by and between ________________________ (`Seller') and the undersigned Buyer (`Buyer'), on the day and date written beside the Buyer's signature. This Agreement is the Alternative Dispute Resolution Agreement referenced in that certain Retail Installment Contract by and between the parties, entered into on this same date (`Sales Agreement'). The meaning of `Seller' for the purposes of this agreement shall include, without limitation, Seller's assignees, and Seller's and assignees' respective agents, employees, officers, directors, shareholders, direct and indirect parent, subsidiaries, affiliates, predecessors and successors. The meaning of `Buyer' shall include Buyer and his, her or their heirs, executors, successors and assigns. The term `State,' for purposes of this Agreement, shall mean ______________________________.
 "In consideration of the foregoing, and as an inducement to Seller to enter into the Sales Agreement with the Buyer, the parties hereto agree as follows:
 "(1) ALL DISPUTES, CONTROVERSIES OR CLAIMS OF ANY KIND AND NATURE BETWEEN SELLER AND BUYER ARISING OUT OF OR IN CONNECTION WITH THE SALES AGREEMENT, OR ARISING OUT OF ANY TRANSACTION OR RELATIONSHIP BETWEEN SELLER AND BUYER OR ARISING OUT OF ANY PRIOR OR FUTURE DEALINGS BETWEEN SELLER AND BUYER, SHALL BE SUBMITTED TO ARBITRATION AND SETTLED BY ARBITRATION IN THE STATE IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION (THE `ARBITRATION RULES OF THE AAA'), AND JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATOR(S) MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF.
 "(2) The parties acknowledge and agree that Seller regularly deals in interstate commerce by, among other things, obtaining inventory and financing from sources outside the State and by using instrumentalities of interstate commerce. Therefore, Seller and Buyer acknowledge and agree that the Sales Agreement involves `commerce' for purposes of the United States Arbitration Act, Title 9, United States Code, `Arbitration,' hereinafter referred to as the `USAA.'
 "(3) The parties intend that this Agreement shall encompass and embody the broadest range of matters that may be arbitrated under federal law. The parties further agree that any question as to the scope of this Agreement shall, to the extent permitted by law, be determined by the Arbitrator (including, without limitation, issues of unfairness, capacity, waiver, unconscionability and so forth). The parties further agree that should one party invoke Arbitration in accordance with this Agreement, the other party shall bring to the Arbitration *Page 543 
process any claim or counterclaim which it may have against the invoking party, whether deemed to be compulsory or permissive in law, and the failure to bring such claim or counterclaim shall constitute a waiver of and a bar to the bringing of such claim or counterclaim in any subsequent Arbitration or legal action.
 "(4) To the extent that a court of competent jurisdiction should determine that the provisions of the USAA are not applicable, Seller and Buyer nevertheless agree to arbitrate under the provisions of State law, in the State, the measure or amount of damages to which either of the parties may be entitled pursuant to the Arbitration Rules of the AAA. To the extent that a court of competent jurisdiction should determine that, in the State, specific performance of this agreement to arbitrate the measure or amount [of] damages to which either of the parties may be entitled is unenforceable, then the parties agree to initiate mediation with a mediator selected by agreement of the parties. If the parties cannot agree on a mediator within thirty (30) days after request for mediation is made by one party to the controversy, then either party may request the senior judge of the United States District Court of the district in which the dispute arises, to appoint a mediator. If, and only if, the mediation fails to resolve the dispute, may the parties thereafter proceed with the complaint in the appropriate court. Such mediator's fee shall be equally divided between the parties.
"(5) . . . .
 "(6) EXCEPT AS LIMITED HEREINABOVE, SELLER AND BUYER UNDERSTAND AND AGREE (I) THAT EACH OF THEM IS WAIVING [THE] RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO A JURY TRIAL; (II) THAT PRE-ARBITRATION DISCOVERY IN ARBITRATION PROCEEDINGS IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS; (III) THE ARBITRATORS' AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING; AND (IV) EITHER PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED. THE VENUE FOR ARBITRATION OR MEDIATION SHALL BE IN THE COUNTY OF THE BUYER'S RESIDENCE.
". . . .
 "THIS IS AN IMPORTANT LEGAL DOCUMENT. IF YOU DO NOT UNDERSTAND IT, DO NOT SIGN IT, AND SEEK LEGAL HELP!"
(Capitalization, other emphasis, and blank lines in original.) The sales contract referenced in the arbitration agreement is not included in the record on appeal.
Southern Energy says that it extended a written warranty on the mobile home purchased by the Kennedys. A copy of the warranty Southern Energy says it provided appears in the record on appeal. The following text appears on the pages of that warranty numbered 4 and 5 (pages 1-3 are not included in the record):
"IF THE RETAILER DOES NOT RESOLVE THE PROBLEM
 "If the Retailer is unable to resolve a problem which you feel is covered by your warranty, you should contact the appropriate division of Southern Energy and provide a written description of the problem and the attempts made to resolve it.
"SOUTHERN ENERGY'S OBLIGATIONS
 "Upon receipt of a notice of a warranty claim, Southern Energy will repair or replace any parts necessary to correct defects in materials or workmanship, or will take other appropriate action as may be required.
"IF SOUTHERN ENERGY DOES NOT RESOLVE THE PROBLEM *Page 544 
 "If Southern Energy's representatives are unable to resolve the problem and you are convinced it is covered by the warranty, you should call Southern Energy's Corporate Headquarters to describe the problem and the attempts made to resolve it.
 "IF THE CORPORATE HEADQUARTERS OF SOUTHERN ENERGY DOES NOT RESOLVE THE PROBLEM
 "If the problem is still not resolved, you can contact the manufactured housing agency for your state. You will find your state agency's address in this Guide.
"IF THE PROBLEM IS STILL NOT RESOLVED
 "If your problems are not satisfactorily remedied through the steps set out above, you are entitled to have the dispute settled through binding arbitration as set out below:
 "In the event of any dispute or claim, arising out of or in connection with the design, construction, warranty or repair of any product or component supplied by the Manufacturer, the condition of the product, the conformity of the product, the merchantability of the product, whether such product is or is not `new,' any representations, promises, undertakings or covenants made or allegedly made by the Manufacturer in connection with or arising out of any transaction or undertaking between the Manufacturer and any purchaser, or subsequent purchaser, the Manufacturer and the purchaser of this product agree to submit such dispute or claim to binding arbitration, pursuant to the provisions of 9 U.S.C. § 1, et seq. and according to the Commercial Rules of Arbitration of the American Arbitration Association then existing."
We note that the warranty is a form document and that nothing on the copy submitted in the record indicates whether, or when, this document was provided to the Kennedys.
On March 25, 1998, the Kennedys sued Jack Lee, Southern Energy, and fictitiously named defendants, alleging negligence, fraud, and breach of express and implied warranties, against both of the named defendants. Specifically, the Kennedys alleged that Jack Lee and Southern Energy told them that the mobile home was new, "was free of defects," and "was top of the line"; that in fact these representations were false; that Jack Lee and Southern Energy breached written and implied warranties on the mobile home; and that Jack Lee, "acting by and through its agents, servants, or employees, negligently carried, transported, set up, installed, and built the foundation for the mobile home." Southern Energy and Jack Lee both moved to compel arbitration of the Kennedys' claims against them. The trial court denied both motions to compel arbitration. Southern Energy appealed from the order denying its motion. Jack Lee did not appeal.
Southern Energy argues that the Kennedys are bound by the arbitration provisions contained in its written warranty, and that, based upon those warranty provisions, the trial court erred in denying its motion to compel arbitration. In the alternative, Southern Energy argues that it is entitled to compel the Kennedys to arbitrate their claims against it, based upon the arbitration agreement the Kennedys signed when they purchased the mobile home.
 II.
We first address Southern Energy's argument that the arbitration agreement between the Kennedys and Jack Lee entitles Southern Energy to compel arbitration. The arbitration agreement is specifically applicable to the parties who executed it, namely, the Kennedys as the buyers and Jack Lee as the seller. The language of the arbitration agreement does not reach the manufacturer; therefore, Southern Energy is not by the terms *Page 545 
of that agreement entitled to compel arbitration. First AmericanTitle Ins. Corp. v. Silvernell, 744 So.2d 883 (Ala. 1999).
 III.
Southern Energy also argues that it is entitled to compel arbitration on the basis that the Kennedys' claims against it are inextricably intertwined with their claims against Jack Lee. This Court has held that in some circumstances a nonsignatory can compel arbitration of claims against it if those claims are sufficiently intertwined with claims against a signatory to the agreement containing the arbitration clause. See, e.g., Ex parteNapier, 723 So.2d 49 (Ala. 1998); Ex parte Dyess, 709 So.2d 447
(Ala. 1997). In such a case, the doctrine of equitable estoppel allows the nonsignatory to compel arbitration. MS Dealer ServiceCorp. v. Franklin, 177 F.3d 942 (11th Cir. 1999). In Franklin, the United States Court of Appeals for the Eleventh Circuit discussed the circumstances in which equitable estoppel arises:
 "First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause `must rely on the terms of the written agreement in asserting [its] claims' against the nonsignatory. Sunkist Soft Drinks, [Inc. v. Sunkist Growers, Inc. 10 F.3d 753, 757 (11th Cir. 1993)]. When each of a signatory's claims against a nonsignatory `makes reference to' or `presumes the existence of' the written agreement, the signatory's claims `arise out of and relate directly to the [written] agreement,' and arbitration is appropriate. Id. at 758. Second, `application of equitable estoppel is warranted . . . when the signatory [to the contract containing the arbitration clause] raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.' Boyd [v. Homes of Legend, Inc., 981 F. Supp. 1423, 1433 (M.D.Ala. 1997)]. Otherwise, `the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.' Sam Reisfeld Son Import Co. v. S.A. Eteco, 530 F.2d 679, 681
(5th Cir. 1976)."
177 F.3d at 947 (interpolations and ellipses in Franklin).
We can lay to one side the first circumstance described inFranklin because the Kennedys assert a claim against the signatory to the arbitration agreement, Jack Lee, based on a contract separate from the freestanding arbitration agreement executed in this case. We are not aware of any other contract in this case that contains an arbitration clause. Nonsignatories may not compel arbitration of claims against them when those claims arise independently of the contract containing the arbitration clause. Ex parte Roberson, 749 So.2d 441 (Ala. 1999) (Lyons, J., concurring as to the section entitled "Agreement to Arbitrate"). That is what Southern Energy seeks to do here.
As for the second circumstance in Franklin, a critical factor is missing in this case that is necessary to allow Southern Energy to compel the Kennedys to arbitrate their claims against it based on a theory that their claims against Southern Energy are inextricably intertwined with their claims against Jack Lee. The concept of "intertwining" necessarily presupposes that the signatory to the arbitration agreement is or will be engaged in an arbitration proceeding with the plaintiff. In this case, Jack Lee did not appeal the trial court's denial of its motion to compel arbitration. Therefore, there is no pending or contemplated arbitration proceeding in which the doctrine of equitable estoppel could allow Southern Energy to compel the Kennedys to arbitrate their claims against it. In other words, "intertwining" requires at least two threads to weave together — one cannot intertwine a single thread. Under the circumstances presented by this case, requiring Southern Energy to litigate the Kennedys' claims against *Page 546 
it cannot render arbitration proceedings meaningless, nor can it thwart federal policy in favor of arbitration.
 IV.
Finally, we address Southern Energy's argument that the arbitration clause in the warranty it says it provided to the Kennedys entitles it to compel them to arbitrate their claims against Southern Energy. In support of its motion to compel arbitration, Southern Energy attached a copy of the warranty it said was provided to the Kennedys (quoted above). It also attached an affidavit from Don McNutt, Southern Energy's director of consumer affairs. He testified:
 "According to the books and records of Southern Energy Homes, Inc., the Plaintiffs in this action sought service under Southern's written limited warranty, prior to suit being filed. A copy of the express, limited warranty extended by Southern Energy Homes, Inc. to the Plaintiffs is attached to Southern Energy Homes, Inc.'s Motion to Compel Arbitration . . . ."
The copy of the warranty that is in the record, however, is simply a standard form, and the only evidence submitted by Southern Energy that indicates that it was provided to the Kennedys is McNutt's affidavit. The warranty contains no notation or certification indicating that the Kennedys received a copy of the warranty, and no documents related to the transaction in which the Kennedys purchased the mobile home, other than the arbitration agreement between the Kennedys and Jack Lee, are included in the record.
As Southern Energy points out, the Kennedys' complaint alleges a breach of both express and implied warranties. The complaint states:
 "22. Defendant, Jack Lee d/b/a Jack Lee Mobile Homes, warranted said mobile home to be merchantable and Defendant, Southern Energy Homes, Inc., warranted said mobile home in writing against defects in materials and workmanship. In fact, said mobile home was not merchantable; it contained defective materials; and was defectively constructed and was not of a quality comparable to that generally accepted in the trade of manufacturing and the selling of mobile homes. Said mobile home, as a result of being defective and of unmerchantable quality, is worthless.
 "23. That the Plaintiffs have requested [many] times that the defendants repair and/or replace said defective mobile home, and the Defendants have failed and refused to do so; thereby causing the Plaintiffs great mental pain, anguish and emotional upset.
 "24. The Defendants have breached the warranties alleged in Paragraph Twenty-Two and are liable for damages therefor, including Plaintiffs' mental anguish.
". . . .
 "27. The Defendants impliedly warranted to the Plaintiffs that said mobile home was habitable. In fact, said mobile home is not habitable in that it contained defective materials and was defectively constructed, and was not of a quality comparable to that generally accepted in the trade of manufacturing and selling mobile homes. Said mobile home, as a result of being defective, is uninhabitable and worthless.
 "28. That the Plaintiffs have requested [many] times that the Defendants repair and/or replace said defective mobile home, and the Defendants have failed and refused to do so; thereby causing the Plaintiffs great mental pain, anguish and emotional upset.
 "29. The Defendants have breached the warranties alleged in Paragraph Twenty-Seven and are liable for damages therefor, including Plaintiffs' mental anguish."
Despite having alleged that Southern Energy breached both written and implied warranties, however, two of the plaintiffs executed affidavits in which they claim that they never received the written warranty relied upon by Southern Energy. *Page 547 
These affidavits were submitted as exhibits to the Kennedys' response to the motions to compel arbitration. Jeannie Kennedy testified in her affidavit as follows:
 "2. That at the time of the purchase of the mobile home made the matter of this suit, I was nineteen (19) years of age.
 "3. That at no time during the negotiations to purchase the subject mobile home did a representative of Jack Lee Mobile Homes explain or offer to explain the contract of sale, any arbitration agreement or warranties relating to said purchase transaction of subject mobile home.
 "4. The Southern Energy Warranty on subject mobile home was never presented by a representative of Jack Lee Mobile Homes nor did I as purchaser have any knowledge of any such warranty on subject mobile home prior to and at the time of purchase. A copy of any such warranty on subject mobile home has never been received by me.
 "5. I have contacted Jack Lee Mobile Homes by telephone and had personal conferences with representatives of Jack Lee Mobile Homes at their sales location in Leroy, Washington County, Alabama, with regards to noted repairs of subject mobile home. One employee of Jack Lee Mobile Homes did arrive at my home, being the subject mobile home, to make noted repairs on one occasion; said employee evaluated the job and stated that he did not have the necessary tools and would return at a later date. To date, no other representative of Jack Lee Mobile Homes or Southern Energy Homes [has] made contact with me regarding said repairs.
 "6. My aunt, Sandra Ford, is completely deaf and has a speech impairment.
 "7. My mother, Letha Kennedy, has a substantial hearing loss and speech impairment."
Letha Kennedy also executed an affidavit that contains testimony identical to that given by Jeannie. Southern Energy made no further evidentiary submissions after the Kennedys responded to its motion to compel arbitration.
Jeannie Kennedy and Letha Kennedy, in their affidavits, state unequivocally that they never received the warranty Southern Energy says it extended and that Southern Energy has never provided any service to them pursuant to that warranty. As previously noted, Southern Energy's records custodian described the warranty attached to Southern Energy's motion to compel arbitration as the warranty extended to the Kennedys. The evidence was in conflict as to whether Southern Energy had provided the Kennedys with the warranty form containing the arbitration provision, and the trial court was therefore entitled to find that there was no express contract of warranty, and, therefore, no arbitration agreement between Southern Energy and the Kennedys. See Shearson Lehman Bros., Inc. v. Crisp,646 So.2d 613, 617 (Ala. 1994) (holding that the court should decide challenges to the very existence of an agreement that includes an arbitration provision). We therefore must reject Southern Energy's argument that it is entitled to compel arbitration on the basis of the arbitration clause contained within the warranty. However, the Kennedys are foreclosed from maintaining any claim they may have had against Southern Energy for its alleged breach of the express written warranty.
 V.
Under the circumstances presented by this case, we affirm the order denying Southern Energy's motion to compel arbitration.
AFFIRMED.
Hooper, C.J., and Maddox, Houston, Cook, See, Brown, Johnstone, and England, JJ., concur. *Page 548