*407
 
 MURDOCK, Justice.
 

 Nancy Cartwright and Tri-County Signature Homes, LLC (“Tri-County”) (hereinafter collectively “the realtors”), appeal from the denial by the Autauga Circuit Court of their motion to compel arbitration of claims filed against them and other defendants by Gary Maitland and Brenda Maitland regarding real property the Maitlands purchased in Prattville. We reverse and remand.
 

 I. Facts and Procedural History
 

 In early 2006, the Maitlands, who had two young daughters, moved from Texas to Alabama and began looking for a house to purchase. The Maitlands engaged Ann Ramsey, a Prattville real-estate agent, to assist them. Patricia Tracy was seeking to sell her Prattville house and had obtained the services of Tri-County and specifically Cartwright, an agent with TriCounty, to assist her.
 

 The Maitlands allege that when they viewed and discussed Tracy’s property with Tracy and Cartwright, both Tracy and Cartwright told them that the house was located in the Prattville school district and that there were no latent defects in the house. Based on these representations, the Maitlands entered into a real-estate purchase/sales contract (“the contract”) to buy Tracy’s house with the Mait-lands signing as the purchasers and Tracy signing as the seller.
 

 The contract contained an arbitration provision in paragraph 16B, which provided as follows:
 

 “CONTROVERSIES, CLAIMS, COMPLAINTS, OR DISPUTES/BINDING ARBITRATION AGREEMENT: The parties agree that the property to be sold has been involved in, and necessarily involves, interstate commerce and that any controversy, claim, complaint, or dispute arising between the parties, or between the parties and the real estate licensees, the Montgomery Area Association of Realtors, Inc. (hereinafter referred to as ‘MAAR’) and/or the Multiple Listing Services, Inc. of the Montgomery Area Association of Realtors, Inc. (hereinafter referred to as ‘MLS’), or arising out of this agreement, is to be settled exclusively by binding arbitration. All parties specifically waive any rights they have to commence an action other than arbitration against each other or against real estate licensees, MAAR, and/or MLS. Any controversies, claims, complaints, or disputes arising or evolving out of or relating to this agreement or breach thereof, shall be settled under the Commercial Arbitration Rules then in force of the American Arbitration Association, and all parties agree to be bound by the decision of this arbitration. The decision of the Arbitrator shall be a final and binding resolution, which may be entered as a judgment by a court of competent jurisdiction; and may then be enforced by use of legal remedies.”
 

 (Capitalization in original.)
 

 The contract was executed in February 2006. The closing on the property occurred on March 6, 2006. It is undisputed that the Maitlands financed the purchase of the property with a loan from Wells Fargo Bank, N.A. The Maitlands took possession of the house on the closing date and immediately began cleaning and modifying the house to meet their specifications.
 

 The Maitlands allege that after they moved into the house, a neighbor informed them that Tracy and her husband had manufactured crystal methamphetamine and/or other illegal drugs in the house. The Maitlands then had the house analyzed for drug contamination. The environmental-services firm with whom they contracted confirmed that the house had been used to manufacture methamphetamine; it recommended that all the fumi-
 
 *408
 
 ture that had been moved into the house be burned or destroyed due to the contamination; and it concluded that the house in its then current condition was uninhabitable. As a result, the Maitlands and their children moved into a rental property and continued to pay the mortgage on the property purchased from Tracy. The Maitlands also subsequently learned that the house they had purchased from Tracy was not located in the Prattville school district.
 

 On May 9, 2006, the Maitlands sued Tracy, the realtors, and fictitiously named defendants, alleging breach of contract, fraud, conspiracy, negligence and/or wantonness, and the tort of outrage. The realtors filed a response to the complaint on July 19, 2006, that included a motion to dismiss or to compel arbitration, based upon the arbitration provision in the contract. On December 20, 2006, the realtors filed a motion requesting a ruling on their motion to dismiss or to compel arbitration. The motion was accompanied by an affidavit from Lesa Keith, the owner of TriCounty, who stated that Tri-County “assists sales of real estate to individuals and others moving to Alabama from other states.” Keith stated that “Defendants Cartwright and Tri-County are ‘real estate licensees’ licensed by the State of Alabama” as designated in paragraph 16B of the contract. She also stated that “Brenda Maitland and Gary Maitland, plaintiffs herein, obtained financing for their purchase of the property which is the subject of this lawsuit from Wells Fargo Bank, N.A., in Maitland, Florida. Wells Fargo Bank, N.A., does business in other states in addition to Alabama and Florida.” Keith also stated that the Maitlands obtained a home warranty in connection with the purchase/sale from American Home Shield, a business that operates “in states throughout the United States in addition to Alabama.”
 

 The trial court held a hearing on the realtors’ motion to dismiss or to compel arbitration on February 20, 2007, and on that date the Maitlands filed an amended complaint, in which they omitted their breach-of-contraet claim but realleged their claims of fraud, conspiracy, negligence and/or wantonness, and the tort of outrage. After hearing arguments from the parties, the trial court denied the realtors’ motion to compel arbitration without stating its reasons for doing so. The realtors appeal.
 

 II. Standard of Review
 

 “This Court’s review of an order granting or denying a motion to compel arbitration is de novo.
 
 First American Title Ins. Cory. v. Silvernell,
 
 744 So.2d 883, 886 (Ala.1999);
 
 Crimson Indus., Inc. v. Kirkland,
 
 736 So.2d 597, 600 (Ala.1999);
 
 Patrick Home Ctr., Inc. v. Karr,
 
 730 So.2d 1171 (Ala.1999).”
 

 United Wisconsin Life Ins. Co. v. Tankersley,
 
 880 So.2d 385, 389 (Ala.2003). Furthermore:
 

 “ ‘A motion to compel arbitration is analogous to a motion for summary judgment.
 
 TranSouth Fin. Corp. v. Bell,
 
 739 So.2d 1110, 1114 (Ala.1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for ai’bi-tration and proving that that contract evidences a transaction affecting interstate commerce.
 
 Id.
 
 “After a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.” ’
 

 “Fleetwood Enters., Inc. v. Bruno,
 
 784 So.2d 277, 280 (Ala.2000) (quoting
 
 Jim Burke Auto., Inc. v. Beavers,
 
 674 So.2d 1260, 1265 n. 1 (Ala.1995) (emphasis omitted)).”
 

 
 *409
 

 Vann v. First Cmty. Credit Corp.,
 
 834 So.2d 751, 753 (Ala.2002).
 

 III. Analysis
 

 From the facts, it is apparent that a contract calling for arbitration exists. The Maitlands contend, however, that the realtors did not carry then’ burden of demonstrating that the contract evidences a transaction affecting interstate commerce. As noted above, the realtors submitted an affidavit from Keith averring that the Maitlands were residents of Texas who relocated to Alabama and purchased the subject property; that the Maitlands financed the purchase with a loan obtained from a Florida office of Wells Fargo Bank, N.A.; and that the home warranty the Maitlands obtained in connection with the purchase of the property was furnished by American Home Shield, a business that operates throughout the United States. These facts constitute evidence that the transaction affects interstate commerce.
 

 The Maitlands do not dispute that these facts show a relationship to interstate commerce. Instead, they object that the affidavit does not meet the requirements of Rule 56(e), Ala. R. Civ. P.,
 
 [1]
 
 which dictates that affidavits must be based “on personal knowledge” and “shall set forth such facts as would be admissible in evidence.” At least concerning the information respecting the home-warranty company, the Maitlands appear to be correct.
 

 “[I]f an affidavit or the documents attached to an affidavit fail to comply with this rule, the opposing party must object to the admissibility of the affidavit or the document and move to strike.
 
 Ex parte Elba Gen. Hosp. & Nursing Home, Inc.,
 
 828 So.2d 308, 312-13 (Ala.2001) (noting that a party must object to evidence submitted in support of a motion for a summary judgment that does not comply with Rule 56(e), Ala. R. Civ. P.);
 
 Chatham v. CSX Transp., Inc.,
 
 613 So.2d 341, 344 (Ala.1993) (‘A party must move the trial court to strike any nonad-missible evidence that violates Rule 56(e). Failure to do so waives any objection on appeal and allows this Court to consider the defective evidence.’).”
 

 Elizabeth Homes, L.L.C. v. Cato,
 
 968 So.2d 1, 4-5 (Ala.2007).
 

 The Maitlands did not specifically object in the trial court to the admission of Keith’s affidavit, nor did they move to strike it from the record. Accordingly, the Maitlands waived any objection to the affidavit, which renders it competent evidence to aid the realtors’ in meeting their burden of proving that the transaction affects interstate commerce. The burden therefore shifted to the Maitlands to establish that the arbitration agreement is not valid or that it does not apply to this dispute.
 

 The Maitlands provide four arguments as to why the arbitration provision should not apply. First, they argue that the provision is not connected to the claims asserted in their amended complaint. The Maitlands note that they dropped their breaeh-of-contract claim in their amended complaint and instead rely upon tort claims of fraud, conspiracy, negligence and/or wantonness, and outrage. By forgoing the breach-of-contract claim, the Maitlands maintain that they have avoided any obligation to arbitrate their remaining tort claims.
 

 This argument is quite similar to one made by the plaintiffs in
 
 Elizabeth Homes, L.L.C. v. Cato,
 
 supra, in which the plaintiffs contended that “they [were] the ‘mas
 
 *410
 
 ters’ of the complaint, ... and that this Court [could ]not assume that the [plaintiffs] must be suing under the purchase agreement.” 968 So.2d at 9. We rejected the argument in
 
 Cato,
 
 and we reject it here because it ignores the broad language of the arbitration provision.
 

 The arbitration provision states that it applies to “any controversy, claim, complaint, or dispute arising between the parties, or between the parties and the real estate licensees ...
 
 or
 
 arising out of this agreement.” (Emphasis added.) It is clearly not limited to claims alleging breach of contract. The Maitlands note, citing such cases as
 
 Ex parte Cupps,
 
 782 So.2d 772 (Ala.2000), and
 
 Old Republic Insurance Co. v. Lanier,
 
 644 So.2d 1258 (Ala.1994), that this Court has held that such phrases as “arises under” and “arising hereunder” “cover a much narrower scope of disputes than the phrase ‘relating to.’ ” Maitlands’ brief, p. 20. Though this is true, the Maitlands’ argument overlooks the fact that the above-quoted language from the arbitration provision applies to “any controversy, claim, complaint, or dispute arising between the parties, or between the parties and the real estate licensees.” The Maitlands’ argument also neglects the fact that the contract also provides for the arbitration of “[a]ny controversies, claims, complaints, or disputes arising or evolving out of or
 
 relating to
 
 this agreement .... ” (Emphasis added.) The Maitlands’ remaining claims fall within these descriptions.
 

 Although the clauses quoted above from the arbitration provision do not explicitly reference claims or disputes relating to the transaction at issue and instead reference claims relating to or arising out of “the agreement,” this Court observed in
 
 Cato:
 

 “In interpreting an arbitration provision, ‘any doubts concerning the
 
 scope
 
 of arbitrable issues should be resolved in favor of arbitration,
 
 whether the problem at hand is the construction of the contract language itself
 
 or an allegation of waiver, delay, or a like defense to arbi-trability.’
 
 Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp.,
 
 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (emphasis added; footnote omitted). ‘Thus, a motion to compel arbitration should not be denied “unless it may be said with
 
 positive assurance
 
 that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.”
 
 United Steelworkers of America v. Warrior & Gulf Navigation Co.,
 
 363 U.S. 574, 582-83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).’
 
 Ex parte Colquitt,
 
 808 So.2d 1018, 1024 (Ala.2001) (emphasis added).”
 

 968 So.2d at 7.
 

 The Maitlands allege that the realtors, along with Tracy, induced them through fraud to sign the contract, that the realtors and Tracy conspired to hide information concerning the toxic nature of the property, that their failure to disclose the information about the property was negligent or wanton, and that they inflicted “severe emotional distress” upon the Maitlands through the sale of property that was previously used to manufacture crystal methamphetamine. The arbitration provision does not contain any limiting language that would constitute a “positive assurance” that the provision does not cover the Mait-lands’ claims.
 

 The Maitlands also contend that the realtors were not signatories to the contract and that, therefore, they cannot claim the benefit of the arbitration provision. This argument again neglects the plain language of the arbitration provision. That provision states that it applies to “any controversy, claim, complaint, or dispute arising between the parties,
 
 or between the parties and the real estate licensees
 
 .... ” (Emphasis added.) It is
 
 *411
 
 undisputed that Cartwright and her employer Tri-County are “real estate licensees” within the meaning of the contract; thus, the arbitration provision on its face encompasses disputes arising between the Maitlands, who are parties to the contract, and the realtors, who are real-estate licensees.
 

 It is true that “[w]hen an arbitration agreement limits arbitration to the signatories to the contract, this Court has refused to compel arbitration of a nonsigna-tory’s claim, because the party resisting arbitration has not agreed to arbitrate claims against a nonsignatory.”
 
 Ex parte Cox,
 
 828 So.2d 295, 298 (Ala.2002). The arbitration provision in question, however, does not limit arbitration to the signatories to the contract. Moreover, in this case, the nonsignatory is the party seeking to
 
 compel
 
 arbitration; the signatory, the party that has contractually agreed to arbitrate, is
 
 resisting
 
 arbitration.
 

 Further, this Court has made it clear that in some circumstances where the arbitration provision in question does not specifically limit its reach to signatories, nonsignatories may enforce it. One such circumstance is when a signatory is “ ‘equitably estopped from contesting [the nonsignatory’s] standing to invoke the [arbitration] clause.’”
 
 Ex parte Isbell,
 
 708 So.2d 571, 576 (Ala.1997) (quoting
 
 Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,
 
 10 F.3d 753, 757 (11th Cir.1993) (first bracketed language added)). Estoppel requires that the “description of the parties subject to the arbitration agreement not be so restrictive as to preclude arbitration by the party seeking it.”
 
 Ex parte Stamey,
 
 776 So.2d 85, 89 (Ala.2000).
 

 In
 
 First American Title Insurance Corp. v. Silvernell,
 
 744 So.2d 883 (Ala.1999), this Court explained why the doctrine of estoppel did not apply to the arbitration provision at issue there, contrasting the provision with the arbitration agreement in
 
 Ex parte Napier,
 
 723 So.2d 49 (Ala.1998), an earlier case in which this Court had found the doctrine of estoppel applicable:
 

 “The arbitration provision in the Sil-vernell-First American contract provided:
 

 “ T4. ARBITRATION
 

 “ ‘Unless prohibited by applicable law,
 
 either the Company or the insured
 
 may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to,
 
 any controversy or claim between the Company and the insured
 
 arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters, when the Amount of Insurance is $1,000,000.00 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000.00 shall be arbitrated only when agreed to by both the Company and the insured.’
 

 “(Emphasis added.) Unlike the scope of the agreement in
 
 Ex parte Napier,
 
 [723 So.2d 49 (Ala.1998),] the scope of the arbitration agreement at issue in this case is relatively narrow. In
 
 Napier,
 
 the arbitration agreement at issue encompassed, among other things, disputes ‘arising from or relating to ... the relationships which [resulted] from [the] Contract.’ 723 So.2d at 51. That provision was, therefore, broad enough to encompass disputed claims arising out of the relationship of the plaintiff insureds (Napier and Godfrey) and the nonsigna-tory insurer (Foremost) and its agent (Manning). In addition, this Court in
 
 *412
 

 Napier
 
 concluded that the plaintiffs had specifically alleged that the named defendants, including Foremost and Manning, had conspired against them. For these reasons, this Court held that the plaintiffs’ claims against the nonsignato-ries had a connection to the claims against the signatories sufficient to es-top the plaintiffs from denying the enforceability of the arbitration provision.”
 

 744 So.2d at 888.
 

 Similarly, in
 
 ECS, Inc. v. Goff Group, Inc.,
 
 880 So.2d 1140 (Ala.2003), the Court explained why several cases cited by the plaintiff, in which a nonsignatory’s attempt to invoke an arbitration provision that was limited to signatories was unsuccessful, were not analogous to the arbitration provision at issue in
 
 ECS:
 

 “The cases [Goff] cites involved arbitration clauses fundamentally different from the one at issue. For example, the arbitration provision in
 
 [Ex parte Cox,
 
 828 So.2d 295 (Ala.2002),] provided, in pertinent part: ‘ “Any controversy or claim between or among
 
 you
 
 and
 
 I
 
 [sic] or
 
 our assignees
 
 arising out of or relat- - ing to this contract ... shall, if requested by either
 
 you
 
 or
 
 me,
 
 be determined by arbitration....’” 828 So.2d at 296 (emphasis added). In
 
 [Monsanto Co. v. Benton Farm,
 
 813 So.2d 867 (Ala.2001) ], the arbitration provision stated, in part: ‘
 
 “You
 
 [the buyer],
 
 your agents,
 
 and any other persons having or claiming to have a
 
 claim against Seller
 
 relating to the goods sold agree that any controversy or claim arising out of or relating to this contract or the goods sold hereunder, ... may be settled by arbitration....’” 813 So.2d at 869 (emphasis added).
 
 [Parkway Dodge, Inc. v. Yarbrough,
 
 779 So.2d 1205 (Ala.2000),] involved an arbitration provision that stated, in part: ‘ “The
 
 Dealer and Purchasers)
 
 mutually covenant .... that [as to] all disputes ... resulting from or arising out of the sale transaction entered into ...
 
 Dealer and the purchasers) agree to submit such dispute(s)
 
 to BINDING ARBITRATION.” ’ 779 So.2d at 1206 (capitalization original; emphasis added).
 
 [Southern Energy Homes, Inc. v. Kennedy,
 
 774 So.2d 540 (Ala.2000),] involved an arbitration clause that stated, in part: ‘ “All disputes, controversies or claims ...
 
 between seller and buyer ...
 
 arising out of any transaction or relationship
 
 between seller and buyer
 
 or arising out of any prior or future dealings
 
 between seller and buyer,
 
 shall be ... settled by arbitration.” ’ 774 So.2d at 542 (emphasis added).
 

 “In each of those cases, the language of the arbitration provision limited the clause’s application to the
 
 parties,
 
 or to
 
 specifically described
 
 third parties. In this case, by contrast, the clause merely requires the arbitration of ‘any dispute arising out of [the] Agreement, including its formation, validity or applicability to the dispute.’ Its scope is not limited to the parties to the agreement, or to their agents or assignees. Thus, this clause is ‘not so restrictive as to preclude arbitration by [ECS].’
 
 Ex parte Stamey,
 
 776 So.2d [85] at 89 [ (Ala.2000) ].”
 

 880 So.2d at 1146-47.
 

 The Court’s several decisions on this subject make it clear that estoppel applies in a dispute involving an arbitration agreement when the language of the arbitration agreement is not specifically limited to the signatories of the agreement and is, instead, broad enough to encompass disputed claims between a signatory and a nonsignatory. The arbitration provision at issue specifically encompasses disputes between a party and “the real estate licensees,” nonsignatories to the contract. Moreover, similar to the situation in
 
 Napier,
 
 the Maitlands alleged that the realtors had conspired with Tracy,
 
 *413
 
 thus clearly connecting their claims against a signatory to their claims against the nonsignatories. Consequently, we reject the Maitlands’ effort to contest the arbitration provision on the basis that the realtors were not parties to the contract containing the arbitration provision.
 

 The Maitlands’ third contention as to why the arbitration provision should not apply in this action is that it is void under the doctrine of unconscionability. The Maitlands state that there is no evidence indicating that they have the monetary means to retain the services of an arbitrator, especially given that they are having to make a loan payment on one house while simultaneously renting another. They note that the filing fee for arbitration also could increase their financial burden. On this basis, the Maitlands argue that the arbitration provision is “one-sided” and “obviously in favor of [the realtors.]” Maitlands’ brief, p. 27.
 

 “It is well settled that ‘[t]he burden of proving unconscionability of an arbitration agreement rests with the party challenging the agreement.’
 
 Green Tree Fin. Corp. of Alabama v. Vintson,
 
 753 So.2d 497, 504 (Ala.1999);
 
 Briarcliff Nursing Home, Inc. v. Turcotte,
 
 894 So.2d 661, 665 (Ala.2004); see also
 
 Young v. Jim Walter Homes, Inc.,
 
 110 F.Supp.2d 1344, 1347 (M.D.Ala.2000). The party challenging the agreement must demonstrate that ‘(1) [the challenged] terms ... are grossly favorable to a party that has (2) overwhelming bargaining power.’
 
 American Gen. Fin., Inc. v. Branch,
 
 793 So.2d 738, 748 (Ala.2000) (summarizing the four factors set forth in
 
 Layne v. Garner,
 
 612 So.2d 404, 408 (Ala.1992)).”
 

 Sloan Southern Homes, LLC v. McQueen,
 
 955 So.2d 401, 403 (Ala.2006).
 

 The arbitration provision does not explain how the costs of arbitration are to be divided between the parties. The Mait-lands’ argument appears to assume that the burden will fall completely on them, an assumption that is speculative and not a basis for invoking the doctrine of uncon-scionability. The financial hardship the Maitlands suffered as a result of purchasing the property in question does not constitute evidence indicating that the terms of the arbitration provision are grossly favorable to Tracy or to the realtors, or that those parties had overwhelming bargaining power at the time the Maitlands signed the contract. In fact, the Maitlands present no evidence that demonstrates either requirement for invoking unconscion-ability. Thus, we must reject this argument as well.
 

 Finally, the Maitlands contend that “the provisions of the arbitration clause are so vague that to enforce the same upon the Maitlands would be contrary to the holding of
 
 Kleiner v. First National Bank of Atlanta,
 
 134 F.3d 1054 (11th Cir.1999).” Maitlands’ brief, pp. 27-28. Aside from the fact that we do not find the arbitration provision here to be vague in any material respect, we find no case by that name at that citation in the Federal Reporter 3d. The case that does begin at that book and page,
 
 Paladino v. Avnet Computer Technologies, Inc.,
 
 is decided based on certain principles of federal law that are inappo-site to the present case. We, therefore, do not further consider this argument.
 

 IV. Conclusion
 

 The realtors have met their burden of demonstrating that the contract contained an arbitration provision and that the transaction evidenced by the contract affected interstate commerce. The burden then shifted to the Maitlands to demonstrate that the arbitration provision was not valid or should not be applied in this instance. They failed to do so. Therefore, the trial court erred in denying the motion to compel arbitration. The trial court’s order is
 
 *414
 
 reversed, and the case is remanded for proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 COBB, C.J., and LYONS, STUART, and BOLIN, JJ., concur.
 

 [1]
 

 . This Court applies, by analogy, the practice under Rule 56, Ala. R. Civ. P., dealing with summary-judgment motions, to motions to compel arbitration. See
 
 Ex parte Greenstreet, Inc.,
 
 806 So.2d 1203, 1207 (Ala.2001).