PARKER, Justice.
All causes of action involved in these consolidated appeals arise from the same factual scenario. American Family Life Assurance Company of Columbus (“Aflac”) and Marilyn Phillips Hunter appeal from a judgment of the Franklin Circuit Court denying their motions to compel arbitration. We reverse and remand.

Facts and Procedural History

According to the affidavit testimony of Tyler G. Bennett, Aflac’s vice president of New Business Operations and Account Relations, whose affidavit testimony indicates that he did have access to Aflac’s business records maintained in the ordinary course of Aflac’s business, on July 12, 1990, Richard L. Parker applied to Aflac for a cancer-indemnity insurance policy. Aflac issued Parker a cancer-indemnity policy, policy number A2043738, on July 16, 1990 (“the 1990 policy”). The term of the 1990 policy was month-to-month; the monthly premium was $28.50. Bennett’s affidavit indicates that Aflac received payment for the 1990 policy from August 25, 1990, to August 17,1996. The 1990 policy provided as follows for a “Progressive Payout Benefit”:
“We will pay to the Named Insured as provided below, an indemnity benefit equal to $30 (Thirty Dollars) per month for each whole month this policy is in force subject to the dates this benefit ceases to build. This benefit will cease to build for the Named Insured on: the date of the initial diagnosis of internal cancer; the policy anniversary date next following the Named Insured’s 65th birthday; or, the 20th policy anniversary, whichever occurs first. However, regardless of the age of the Named Insured on the ‘Effective Date’ of this policy, this benefit shall accrue for a period of at least 5 years unless internal cancer is diagnosed prior to the 5th year of coverage.
“This benefit will be paid on: the date the Named Insured is initially diagnosed as having internal cancer; the 20th policy anniversary date; or, the date the Named Insured attains age 79, whichever occurs first. This benefit is payable only once in the lifetime of the Named Insured.”
*61 On May 9, 1996, Parker submitted to Aflac an “Application for Cancer Insurance.” Bennett’s affidavit indicates that Parker’s “application for a new policy provided that the ... 1990 ... policy would terminate on the date the new 1996 cancer policy became effective. [Parker’s] 1996 policy became effective on August 16,1996, and the 1990 policy terminated effective August 16, 1996.” Parker’s “Application for Cancer Insurance” indicated that it was an application for the conversion of the 1990 policy. The application for the new cancer policy stated, in pertinent part:
“5. If this is an application for an upgrade of coverage, the following conditions apply: (a) If cancer is diagnosed between the date this application is signed and the Effective Date of the policy shown in the Policy Schedule, the policy for which this application is made shall be void, and coverage shall continue under the terms of the previous policy, which may remain in force. Any benefits that may be due will be paid under the previous policy, (b) The waiting period and the Time Limit on Certain Defenses provision shall run from the Effective Date of the original policy, and the original policy will be terminated as of the Effective Date of the new policy.”
A cancer insurance policy was issued on August 16, 1996 (“the 1996 policy”), and had the same policy number as the 1990 policy — A2043738. The term of the 1996 policy was month-to-month, and the monthly premium was $35.90. Bennett’s affidavit indicates that Aflac received payment for the 1996 policy from October 18, 1996, to August 8, 2009.
On August 5, 2009, Parker submitted to Aflac an “Application for Cancer Indemnity Insurance.” Parker’s application indicated that it was an application for a new policy; however, Aflac issued Parker a “Cancer Indemnity Insurance” policy on August 16, 2009 (“the 2009 policy”), with the same policy number as the 1990 policy and the 1996 policy — A2043738. Bennett’s affidavit indicates that submitted with Parker’s application for the 2009 policy was an “Arbitration Agreement” (“the arbitration agreement”), which, according to Bennett, was a “condition Aflac required before beginning the underwriting process on [Parker’s] August 5, 2009 Application.” In fact, the 2009 policy, a copy of which was attached to Bennett’s affidavit and which Bennett swore was a “true and correct eop[y],” includes both Parker’s application for the 2009 policy and the arbitration agreement. The arbitration agreement states:
“I, RICHARD PARKER ..., have applied for a policy of insurance from AFLAC[1] and if AFLAC will issue the policy to me, I want to make this agreement with AFLAC.
“I agree that binding arbitration will be used to resolve the following claims, disputes or lawsuits:
“1. Any and all claims, disputes or lawsuits that I have concerning my AFLAC policy; and/or
“2. Any claims, disputes or lawsuits that I have concerning any relationships that my AFLAC insurance policy creates and/or
“3. Any claims, disputes or lawsuits concerning the validity of this arbitration agreement; and/or
“4. Any and all claims, disputes or lawsuits that I have that come up from the proposed sale of the policy by any agent or employee of AFLAC, *62 including any allegation of fraud or improper act.
“I understand that binding arbitration is the hearing and determining of a dispute I have with AFLAC by three persons, one chosen by me, one chosen by AFLAC and a third neutral person appointed by my representative and AF-LAC’s representative by agreement. I also understand that if my representative and AFLAC’s representative cannot agree on a third neutral party then a list of arbitrators will be provided by the American Arbitration Association to my representative and AFLAC’s representative who will then select the third neutral arbitrator from that list. I understand that I will have the choice of having AFLAC pay the fees of the third neutral arbitrator or if I prefer, AFLAC and I will equally divide the expenses and fees of the third neutral arbitrator. Both I and AFLAC agree and understand that we are choosing ARBITRATION INSTEAD OF LITIGATION to resolve any of the above described disputes. Both I and AFLAC understand that we have a right or opportunity to litigate disputes through the court but that we prefer to resolve our disputes through arbitration.
[[Image here]]
“Both I and AFLAC voluntarily and with full understanding WAIVE ANY RIGHT WE HAVE TO A JURY TRIAL. This waiver applies either to arbitration under this agreement or to a court action filed by me. Both I and AFLAC agree and understand that all disputes arising under law, whether made by the courts or the legislature or any other law which includes but is not limited to all contract, tort and third party disputes, will be decided by the use of binding arbitration. The three arbitrators selected will meet, set a date for a hearing, notify AFLAC and me of that date, have a hearing and make the final decision. Both I and AFLAC agree and understand that the arbitrators shall have all power provided by the law subject to this agreement and the insurance policy. AFLAC and I agree and understand that my insurance policy with AFLAC and all related matters are business transactions involving interstate commerce and shall be governed by the Federal Arbitration act at 9 U.S.C. Section 1.
[[Image here]]
“AFLAC and I understand that this arbitration agreement constitutes a portion of my application for insurance. AFLAC and I further understand that there is no insurance contract unless and until my application is accepted by AFLAC. Upon acceptance of my application by AFLAC, as evidenced by the issuance of an insurance policy, this arbitration agreement shall be incorporated by this reference into any insurance policy issued. The overall Insurance Contract shall consist of this Arbitration Agreement, the application for insurance and the insurance policy.
[[Image here]]
“By my signature below, I agree that I have read this Arbitration Agreement and understand it.”
(Capitalization and some emphasis in original; final emphasis added.) The arbitration agreement was signed by Parker. Bennett’s affidavit states that Parker’s “August 5, 2009, Application for a Cancer Insurance policy acknowledged that ‘the original policy will be terminated as of the Effective Date of the new policy’ ” and that Parker was “ ‘giving up his current policy and its benefits for the benefits provided in the new policy.’ ” Bennett’s affidavit also states that “[o]n August 16, 2009, when Aflac issued the new Cancer Insur- *63 anee policy, [Parker’s] earlier Cancer Insurance policy was terminated.” The term of the 2009 policy is month-to-month, and the monthly premium is $61.75. Bennett’s affidavit indicates that Aflac received payment for the 2009 policy from September 14, 2009, to “the present date.”
On August 25, 2010, Parker sued Aflac asserting a claim of bad-faith failure to pay policy benefits allegedly owed to Parker under the 1990 policy. In his complaint, Parker alleged the following pertinent facts:
“3. The 20th anniversary of [the 1990] policy occurred on July 16, 2010. The amount of Progressive Payout Benefit should have been $7,200.00 on that date. [Parker] wrote [Aflac] on November 9, 2009, to confirm that he would receive that benefit because his agent had told him he would not receive such benefit because he had purchased a supplemental policy from A[flac] in May 1996.... No response was made to this letter and no payment of this benefit has been forthcoming despite [Parker’s] entitlement to the benefit.”
Parker then alleged that Aflac had breached the 1990 policy, that Aflac had “acted in bad faith through [its] refusal to pay,” and that Aflac had “engaged in fraud, misrepresentation, deceit and fraudulent suppression.” Parker attached to his complaint the 1990 policy and a letter from Parker to Aflac dated November 9, 2009, the contents of which were summarized above. On September 14, 2010, Parker amended the complaint to add Hunter as a defendant; Parker’s amended complaint alleged that Hunter was “that person or agent who sold a supplemental policy to [Parker].” Against Hunter, Parker asserted claims of “fraud, misrepresentation, deceit and fraudulent suppression.”
On October 1, 2010, based on the arbitration agreement, Aflac filed a motion to compel arbitration of Parker’s claims against Aflac. Aflac supported its motion to compel arbitration with the following evidence: 1) the affidavit of Virgil R. Miller, Aflac’s vice president of Client Services; 2) Bennett’s affidavit; 3) the application for the 1990 policy and the 1990 policy itself; 4) the application for the 1996 policy and the 1996 policy itself; 5) the application for the 2009 policy and the 2009 policy itself; and 6) the arbitration agreement. In his affidavit testimony, Miller testified that he is employed by Aflac as its vice president of Client Services and that the arbitration agreement submitted with the motion to compel arbitration was “a true and correct copy of the Arbitration Agreement entered into between Aflac and [Parker]. It is a business record maintained in the ordinary course of Aflac’s business-” On October 20, 2010, Hunter also filed a motion to compél arbitration. In her motion to compel arbitration, Hunter stated that she “adopt[ed] and join[ed] in the motion and grounds set for[th] by AFLAC in its Motion to Enforce Arbitration as if fully set forth herein.”
On October 22, 2010, Parker filed a motion opposing Aflac’s motion to compel arbitration. Parker argued that Aflac’s motion to compel arbitration should be denied because Parker’s claims are based on the 1990 policy, which undisputedly did not include an arbitration provision. Parker did not submit any evidence in support of his motion.
On November 2, 2010, the circuit court conducted a hearing on Aflac’s and Hunter’s motions to compel arbitration, and on November 8, 2010, it denied the motions. Aflac and Hunter separately appealed. We have consolidated the appeals for the purpose of writing one opinion.

Standard of Review

“ ‘This Court’s review of an order granting or denying a motion to *64 compel arbitration is de novo. First American Title Ins. Corp. v. Silvernell, 744 So.2d 883, 886 (Ala.1999); Crimson Indus., Inc. v. Kirkland, 736 So.2d 597, 600 (Ala.1999); Patrick Home Ctr., Inc. v. Karr, 730 So.2d 1171 (Ala.1999).’
“United Wisconsin Life Ins. Co. v. Tankersley, 880 So.2d 385, 389 (Ala.2003). Furthermore:
“ ‘ “A motion to compel arbitration is analogous to a motion for summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala.1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction affecting interstate commerce. Id. ‘After a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agree-. ment is not valid or does not apply to the dispute in question.’ ”
‘“Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala.2000) (quoting Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala.1995) (emphasis omitted)).’
“Vann v. First Cmty. Credit Corp., 834 So.2d 751, 753 (Ala.2002).”
Cartwright v. Maitland, 30 So.3d 405, 408-09 (Ala.2009).

Discussion

In Green Tree Financial Corp. of Alabama v. Vintson, 753 So.2d 497, 501-02 (Ala.1999), this Court held:
“Section 2 of the Federal Arbitration Act (‘FAA’) provides that ‘[a] 'written provision in any ... contract evidencing a transaction involving [interstate] commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable.’ 9 U.S.C. § 2. Moreover, the Supreme Court of the United States has stated that the FAA establishes a strong federal policy favoring arbitration. Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (the FAA ‘establishes that, as a matter of federal law, any doubts concerning the scope of arbi-trable issues should be resolved in favor of arbitration’). Accordingly, trial courts are required to stay or dismiss proceedings and to compel arbitration when the parties have entered into a valid contract containing an arbitration agreement, and a trial court’s denial of a motion to compel arbitration is subject to appeal. See, e.g., Patrick Home Center, Inc. v. Karr, 730 So.2d 1171, 1172 (Ala.1999). This Court will apply the de novo standard of review to a trial court’s order denying a motion to compel arbitration. Id.”
First, Aflac and Hunter argue that they satisfied their initial burdens in proving that a contract calling for arbitration existed. In so arguing, Aflac and Hunter rely upon the following evidence submitted to the circuit court: the affidavits of Miller and Bennett, the pertinent parts of which are detailed above; the arbitration agreement; Parker’s application for the 1990 policy and the 1990 policy itself; Parker’s application for the 1996 policy and the 1996 policy itself; and Parker’s application for the 2009 policy and the 2009 policy itself. Parker argues that Aflac and Hunter failed to establish that the arbitration agreement existed. Specifically, Parker argues that “[t]here is no evidence in the record that shows that the purported arbitration agreement was attached to the 2009 policy.” Parker’s brief, at p. 18. We *65 agree with Aflac’s and Hunter’s argument that the evidence they presented in support of their motions to compel arbitration was sufficient evidence indicating that a contract calling for arbitration existed.
As the undisputed evidence set forth above shows, the 1990 policy was terminated in favor of the 1996 policy, which, in turn, was terminated in favor of the 2009 policy, which incorporated the arbitration agreement. Therefore, by producing the 2009 policy, which incorporated the arbitration agreement, Aflac and Hunter met their burden of proving that a contract calling for arbitration existed.
The parties have stipulated that the contract containing the arbitration agreement evidences a transaction affecting interstate commerce. Thus, the burden shifted to Parker “‘“to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question.” ’ ” Cartwright, supra (quoting other cases). Parker’s argument on appeal that “[t]here is no evidence in this record that shows that the purported arbitration agreement was attached to the 2009 policy” is not consistent with the facts of this case. As set forth above, Bennett’s affidavit testimony indicates that attached to the affidavit was a true and correct copy of the 2009 policy, which incorporated the arbitration agreement. Therefore, Parker has incorrectly interpreted the evidence in the record.
In support of his argument that the arbitration agreement is not a valid contract to arbitrate, Parker also argues that “[i]t is important to note that the purported arbitration agreement was not signed on behalf of AFLAC.” Parker’s brief, at p. 19. However, Parker has failed to support his argument that the arbitration agreement fails because Aflac did not sign it with any legal authority. This Court held in University of South Alabama v. Progressive Insurance Co., 904 So.2d 1242, 1247-48 (Ala.2004), as follows:
“Rule 28(a)(10), Ala. R.App. P., requires that arguments in an appellant’s ... brief contain ‘citations to the cases, statutes, other authorities, and parts of the record relied on.’ The effect of a failure to comply with Rule 28(a)(10) is well established:
“ ‘It is settled that a failure to comply with the requirements of Rule 28(a) ([10]) requiring citation of authority for arguments provides the Court with a basis for disregarding those arguments:
“ ‘ “When an appellant fails to cite any authority for an argument on a particular issue, this Court may affirm the judgment as to that issue, for it is neither this Court’s duty nor its function to perform an appellant’s legal research. Rule 28(a) ([10]); Spradlin v. Birmingham Airport Authority, 613 So.2d 347 (Ala.1993).”
“ ‘City of Birmingham v. Business Realty Inv. Co., 722 So.2d 747, 752 (Ala.1998). See also McLemore v. Fleming, 604 So.2d 353 (Ala.1992); Stover v. Alabama Farm Bureau Ins. Co., 467 So.2d 251 (Ala.1985); and Ex parte Riley, 464 So.2d 92 (Ala.1985).’
“Ex parte Showers, 812 So.2d 277, 281 (Ala.2001). ‘[W]e cannot create legal arguments for a party based on undeli-neated general propositions unsupported by authority or argument.’ Spradlin v. Spradlin, 601 So.2d 76, 79 (Ala.1992).”
Therefore, we need not consider this argument.
Moreover, the mere fact that neither Aflac nor Hunter executed the arbitration agreement is not dispositive of the issue whether a valid contract calling for arbi *66 tration existed because acceptance of a contract can be demonstrated in ways other than execution. In Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kilgore, 751 So.2d 8 (Ala.1999), a client of Merrill Lynch’s executed a cash-management-account (“CMA”) agreement offered to him by Merrill Lynch; no Merrill Lynch representative signed the CMA agreement. Included in the CMA agreement was a “pre-dispute arbitration agreement.” A dispute arose concerning the CMA agreement, and the client sued Merrill Lynch. Merrill Lynch moved to compel arbitration based upon the arbitration agreement in the CMA agreement; the trial court denied Merrill Lynch’s motion, and Merrill Lynch appealed.
On appeal, Merrill Lynch argued “that the trial court erred in denying its motion to compel arbitration solely on the basis that no representative of Merrill Lynch had signed the CMA agreement containing the arbitration agreement.” In reversing the trial court’s judgment denying Merrill Lynch’s motion to compel arbitration, this Court stated:
“In Allied-Bruce Terminix Cos. v. Dobson, 684 So.2d 102 (Ala.1995), we wrote:
“ ‘ “The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbi-trable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation- of waiver, delay, or like defense to arbitrability.” ’
“684 So.2d at 107 (quoting Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). However, we have held that a party cannot be required to arbitrate a dispute that he or she did not agree to arbitrate. See Capital Inv. Group, Inc. v. Wood-son, 694 So.2d 1268 (Ala.1997).
[[Image here]]
“This Court has held that the object of a signature on a contract is to show mutuality and assent, and that mutuality and assent can be manifested in ways other than a signature. See Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d 297 (Ala.1986); Ex parte Pointer, 714 So.2d 971 (Ala.1997). Unless required by a statute to be in writing, a contract does not have to be signed to be enforceable, so long as it is accepted and acted upon. Tarver, 492 So.2d at 304.
“Although no representative of Merrill Lynch signed the CMA agreement, the absence of a signature by a Merrill Lynch employee does not invalidate the agreement. ‘The [Federal Arbitration Act] only requires that there be a “written provision” in a “contract”; it does not specify that a party’s assent to the terms of a contract containing an arbitration provision can be evidenced only by that party’s signature.’ Ex parte Rush, 730 So.2d 1175 (Ala.1999). Conduct of one party to a contract from which the other may reasonably draw an inference of assent to an agreement is effective as acceptance. Anderson Brothers Chrysler Plymouth Dodge, Inc. v. Hadley, 720 So.2d 895 (Ala.1998) (the failure of a party to sign a contract on a signature line next to an arbitration provision did not render the provision unenforceable). In addition, it is a general principle of contract law that when a contract is signed by a party or parties ‘to be charged,’ a contract can be enforced where the other party fails to sign the contract; See Anselmo Meat Co. v. Riley, 533 So.2d 552 (Ala.1988).
“The record indicates that Merrill Lynch provided [the client] with the CMA agreement and that [the client] *67 executed it. In addition, Merrill Lynch acted in recognition of the formal agreement. Therefore, we conclude that Merrill Lynch manifested assent to the terms of the agreement, including the arbitration agreement contained therein, notwithstanding the absence of a signature by its representative. Accordingly, we conclude that the arbitration provision contained in the CMA agreement is enforceable.”
Merrill Lynch, 751 So.2d at 11. The record indicates that Aflac received and accepted Parker’s monthly premium payments for the 2009 policy; such action is evidence that Aflac consented to the terms of the 2009 policy, which incorporated the arbitration agreement.
Further, the record indicates that Paul S. Amos II, president of Aflac, and Joey M. Loudermilk, secretary of Aflac, both signed the 2009 policy, which incorporated the arbitration agreement. Therefore, for this reason as well, it is inconsequential that the arbitration agreement itself was not signed by any Aflac representative because the 2009 policy, which incorporated the arbitration agreement, was signed by Amos and Loudermilk.
Based on the foregoing, we conclude that Aflac and Hunter satisfied their burden of proving that an arbitration agreement existed between the parties. As a result, the burden then shifted to Parker to present evidence refuting the evidence provided by Aflac and Hunter; Parker did not present any evidence refuting Aflac’s and Hunter’s evidence that the arbitration agreement existed.
Next, Aflac and Hunter argue that the arbitration agreement “clearly expresses the parties’ intent that all disputes between them will be resolved by arbitration.” Aflac’s brief, at p. 24. In support of their argument, Aflac and Hunter rely upon the following portion of the arbitration agreement:
“Both I and AFLAC agree and understand that all disputes arising under law, whether made by the courts or the legislature or any other law which includes but is not limited to all contract, tort and third party disputes, will be decided by the use of binding arbitration.”
Parker does not offer any argument in his brief that the arbitration agreement was not broad enough to include his claims against Aflac and Hunter. In Green Tree, this Court held:
“Whether an arbitration provision encompasses a party’s claims ‘is a matter of contract interpretation, which interpretation is guided by the intent of the parties, and which intent, absent ambiguity in the clause, is evidenced by the plain language of the clause.’ Allied-Brace Terminix Cos. v. Dobson, 684 So.2d 102, 110 (Ala.1995).”
753 So.2d at 505. We agree with Aflac’s and Hunter’s arguments that the above language of the arbitration agreement is not ambiguous and that it is broad enough to include arbitration of Parker’s claims against them.

Conclusion

Aflac and Hunter satisfied their burden of proving that an arbitration agreement existed that applied to Parker’s claims against them. Because there was no issue as to whether the contract containing the arbitration agreement affected interstate commerce, the burden then shifted to Parker to offer evidence refuting the evidence offered by Aflac and Hunter; Parker offered no evidence to refute that evidence and presents no persuasive argument that Aflac and Hunter failed to meet their burden. Therefore, we reverse the circuit court’s judgment denying Aflac’s and Hunter’s motions to compel arbitration, *68 and we remand the case to the circuit court and direct it to grant those motions.
1100227 — REVERSED AND REMANDED WITH INSTRUCTIONS.
1100282 — REVERSED AND REMANDED WITH INSTRUCTIONS.
MALONE, C.J., and STUART, SHAW, and WISE, JJ., concur.

. Although "Aflac” is capitalized in the arbitration agreement, it does not appear from other portions of the record that the entity uses all capital letters when referring to itself.