WISE, Justice.
Macon County Greyhound Park, Inc., d/b/a Victoryland (“MCGP”),[1] appeals from *154 the trial court’s orders denying its motions to compel arbitration in the actions filed against it by Marie Hoffman, Sandra R. Howard, and Dianne Slayton (hereinafter collectively referred to as “the plaintiffs”).
Facts and Procedural History
Case No. 1141273
On January 29, 2008, Hoffman sued MCGP based on events occurring on January 21, 2008. In her complaint, Hoffman alleged that, on January 21, 2008, she was playing on an electronic-bingo machine at Victoryland, a greyhound parimutuel racecourse that is owned and operated by MCGP. Hoffman alleged that she hit a $110,000 jackpot while playing the machine; that MCGP employees and a technician came over; and that the technician cleared the machine and told her that the jackpot had been caused by a malfunction of the machine. Hoffman also alleged that she continued to play that machine; that she hit another $110,000 jackpot; that MCGP employees and a technician came over again; that the technician again cleared the machine and told her that the second jackpot was also the result of a malfunction; and that she was no longer allowed to play that machine. In her complaint, Hoffman asserted a breach-of-contract claim; an unjust-enrichment claim; a claim of recklessness and wantonness; and a negligent-training-and-supervision claim.
Case No. 1141277
On September 22, 2009, Howard sued MCGP. In her complaint, she alleged that she had played an electronic-bingo machine at Quincy’s 777 Casino, which is owned and operated by MCGP, on numerous occasions. Howard also alleged that, on August 28, 2009, she played an electronic-bingo machine at Quincy’s 777, but she did not win any jackpots on that date; that Larry P. Langford, who was the mayor of the City of Birmingham at that time, was also a patron at Quincy’s 777 on that date; that MCGP employees escorted Langford to specific electronic-bingo machines; that, while playing on those machines, Langford won jackpots; and that Langford won in excess of $50,000 while playing those machines. She also alleged that, on prior occasions when Langford had played the electronic-bingo machines at MCGP, he had won substantial jackpots and that, “upon information and belief,” MCGP employees had escorted Langford to specific electronic-bingo machines on those other occasions as well.
In her complaint, Howard alleged a breach-of-contract claim; a claim that MCGP negligently, recklessly, and/or wantonly operated bingo games at Quincy’s 777 Casino on August 28, 2009; claims of fraud and fraudulent suppression; and a claim of unconscionable, false, misleading, and deceptive trade practices. She subsequently amended her complaint to add Milton E. McGregor, an owner of MCGP, and Monte Russell, who she alleged was “a high-ranking employee of MCGP,” as defendants and to assert a conspiracy claim.
Case No. 1141278
On October 29, 2009, Slayton sued MCGP. She also sued Multimedia Games, Inc., which she alleged was the owner and operator of the electronic-bingo machine she had played on the premises of Victory-land. In her complaint, she alleged that, on August 26, 2009, she was playing on an electronic-bingo machine at Victoryland; that she played the maximum bet possible on the machine and hit the play button; that a winning bingo card appeared; and that the machine froze, stopped, and indicated that she had won a jackpot of *155 $50,000. Slayton alleged that MCGP employees then approached her and informed her that she had won a jackpot; that the MCGP employees requested a copy of her identification and Social Security card so they could process the payment of her jackpot; and that an MCGP employee subsequently told her that they would not pay the jackpot because the machine had malfunctioned, resulting in the jackpot. Based on the events of August 26, 2009, Slayton asserted a breach-of-contract claim; a fraud claim; claims that the defendants had negligently, recklessly, or wantonly voided her jackpot win; a claim that the defendants had negligently, recklessly, and wantonly maintained and serviced the electronic-bingo machine she had been playing; an unjust-enrichment claim; a claim of spoliation of evidence; a negligent-training-and-supervision claim; and a claim of fraudulent concealment and suppression.
In each of these three cases, MCGP filed motions to compel binding arbitration and to dismiss the proceedings, arguing that each case involved a contract involving interstate commerce that included a written arbitration agreement.[2] MCGP presented evidence indicating that in March 2007 it had adopted the “Macon County Greyhound Park Official Bingo Rules” (“the official bingo rules”) and that it amended those rules on August 10, 2008. The official bingo rules provide, in pertinent part:
“Participation in any bingo game constitutes a Patron’s understanding of, and full and unconditional agreement to and acceptance of these Official Rules.”
The official bingo rules include the following arbitration provision:
“Arbitration and Disputes. As a condition of participating in any bingo game, Patron agrees that any and all disputes which cannot be resolved between the parties, claims and causes of action arising'out of or connected with any bingo game, or any prizes awarded, or the determination of winners shall be resolved individually, without resort to any form of class action and exclusively by arbitration pursuant to the commercial arbitration rules of the American Arbitration Association, then effective. Further, in any such dispute, under no circumstances will Patron be permitted to obtain awards for, and Patron hereby waives all' rights to claim punitive, incidental or consequential damages, or any other damages, including attorneys’ fees, out-of-pocket expenses and/or any other damages, and Patron further waives all rights to have damages multiplied or increased. All issues and questions concerning the construction, validity, interpretation and enforceability of these Official Rules, or the rights and obligations of Patron and Operator in connection with these bingo games, shall be governed by, and construed in accordance with, the laws of the State of Alabama, without giving effect to the conflict of laws rules thereof, and all proceedings shall take place in that State in the City of Tuskegee, County of Macon.”
MCGP also presented evidence indicating that the plaintiffs were members of its QClub Advantage program,- which' is “a voluntary customer loyalty program which rewards customers with points for'their electronic bingo play.” As a member, each plaintiff had received an orange QClub card. The following was printed on the back of the card:-
“Your participation in this program is your acceptance of and agreement with the MCGP, Inc. Official Bingo Rules.”
*156 MCGP also attached to the motions to compel arbitration copies of what it asserted was an electronic signature of each plaintiff. It also attached affidavits .from Lewis Benefield, the chief operating officer for MCGP. In his affidavit, Benefield stated that the attached signature in case no. 1141273 was an electronic copy of Hoffman’s signature authorizing the transfer, of her points, from a previous rewards, program to the QClub Advantage program and that the electronic signatures in case no. 1141277 and case no. 1141278 were electronic signatures of Howard’s and Slayton’s agreeing to the terms of the official bingo rules. MCGP argued that each of the plaintiffs had demonstrated her agreement to be bound by the official bingo rules, which included the arbitration agreement, by playing the electronic-bingo machines at MCGP’s facilities; by participating in the QClub Advantage program; and by their electronic signatures.
MCGP also asserted that the contracts that contained the arbitration provision involved interstate commerce. Specifically, it presented evidence indicating that all the electronic-bingo machines on MCGP’s premises were manufactured oiitside Alabama. It also presented evidence indicating that the electronic-bingo machine ’ at issue in case no. 1141273 was owned by a Nevada corporation with its principal place of business in Reno, Nevada. Finally, it presented evidence indicating that 48-52% of the participants in its QClub Advantage program were from states other than Alabama.
.Each of the plaintiffs objected to the motions to compel arbitration. Each argued that there was no agreement to arbitrate; that the arbitration provisions were unconscionable and therefore void; that the official bingo rules were outside the rules promulgated by the sheriff of Macon County pursuant to Ala. Const. 1901, Amend. No. 744 (Local Amendments, Macon County, § 1, Ala. Const. 1901 (Off. Recomp.)) (“the sheriffs rules”); that they were fraudulently induced into entering the contract containing the arbitration provision; and that the arbitration provision is void because the contracts in question were illegal gambling contracts.
On.July 20, 2015, the trial court entered a separate order in each case denying the motion to compel arbitration. MCGP appealed those denials to this Court. We consolidated those cases for the purpose of writing one opinion. ;
Standard of Review
“This Court’s standard of review on an appeal from a trial court’s order granting or denying a motion to compel arbitration is well settled. Bowen v. Security Pest Control, Inc., 879 So.2d 1139, 1141 (Ala. 2003). A direct appeal is the proper procedure by which to seek review of such an order, Rule 4(d), Ala. R. App. P„ and this Court yvill review de noyo the trial court’s grant or denial of a motion to compel arbitration. Bowen, 879 So.2d at 1141. The party seeking to compel arbitration has the initial burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction involving interstate commerce. Polaris Sales, Inc. v. Heritage Imports, Inc., 879 So.2d 1129, 1132 (Ala. 2003). The party seeking to compel arbitration must .present some evidence tending to establish its claim. Wolff Motor Co. v. White, 869 So.2d 1129, 1131 (Ala. 2003). Once the moving party meets that initial burden, the party opposing arbitration has the burden of presenting evidence tending to show that the arbitration agreement is invalid or that it does not apply to the dispute in question. Bowen, 879 So.2d at 1141. See also Title Max of Birmingham, *157 Inc. v. Edwards, 973 So.2d 1050, 1052-53 (Ala. 2007).”
Alabama Title Loans, Inc. v. White, 80 So.3d 887, 891-92 (Ala. 2011).
Discussion
MCGP argues that the trial court erred when it denied the motions to compel arbitration.
“In Green Tree Financial Corp. of Alabama v. Vintson, 753 So.2d 497, 501-02 (Ala. 1999), this Court held:
“ ‘Section 2 of the Federal Arbitration Act (“FAA”) provides that “[a] written provision in any ... contract evidencing a transaction involving [interstate] commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable.” 9 U.S.C. § 2. Moreover, the Supreme Court of the United States has stated that the FAA establishes a strong federal policy favoring arbitration. Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (the FAA “establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration”). Accordingly, trial courts are required to stay or dismiss proceedings and to compel arbitration when the parties have entered into a valid contract containing an arbitration agreement, and a trial court’s denial of a motion to compel arbitration is subject to appeal. See, e.g., Patrick Home Center, Inc. v. Karr, 730 So.2d 1171, 1172 (Ala. 1999). This Court will apply the de novo standard of review to a trial court’s order denying a motion to compel arbitration. Id.’ ”
American Family Life Assurance Co. of Columbus v. Parker, 92 So.3d 58, 64 (Ala. 2012) (emphasis added).
First, this Court must address whether there is a valid contract containing an arbitration agreement. It is undisputed that the alleged contracts that included the arbitration provisions were gambling contracts, i.e., contracts to play electronic bingo. Section 8-l~150(a), Aa. Code 1975, specifically provides: “Ml contracts founded in whole or in part on a gambling consideration are void.”
In Johnson v. Jefferson County Racing Ass’n, Inc., 1 So.3d 960 (Ala. 2008), Debra Johnson, on her own behalf and on behalf of a class of similarly situated persons, sued the Jefferson County Racing Association, Inc., d/b/a The Birmingham Race Course (“JCRA”), seeking to recover money she and others had paid to participate in an activity advertised as “Quincy’s MegaSweeps” (“MegaSweeps”) after this Court held in Barber v. Jefferson County Racing Ass’n, Inc., 960 So.2d 599, 604 (Ala. 2006), that MegaSweeps “involve[d] the use of slot machines,’ a gambling device that is illegal in Aabama.” Johnson, 1 So.3d at 961. JCRA filed a motion to compel Johnson to arbitrate her claims and to dismiss Johnson’s action. Johnson argued that JCRA could not establish a valid contract calling for arbitration because Mega-Sweeps amounted to a contract founded on gambling and the contract was thus void and unenforceable pursuant- to. § 8-1-150, Aa. Code 1975. The trial court determined that, because Johnson’s arguments amounted to a challenge to the Me-gaSweeps contract as a whole rather than a challenge to the arbitration clause specifically, the issue of the validity of the contract was to be determined by the arbitrator, and not the court. Therefore, it dismissed Johnson’s action and ordered that she arbitrate her claims. Johnson ap *158 pealed to this Court, arguing that the trial court’s order compelling her to arbitrate her claims was erroneous because, she said, the MegaSweeps contract was void ab initio and the arbitration clause itself was therefore void.
In addressing Johnson’s argument that there was no valid contract calling for arbitration, this Court stated:
“Johnson argues that JCRA cannot meet its initial burden of demonstrating the existence of a contract calling for arbitration because, she argues, ‘under this Court’s unanimous decision in Barber [v. Jefferson County Racing Ass’n, Inc., 960 So.2d 599 (Ala. 2006) ], the MegaSweeps contracts relied on by the JCRA are void ab initio.’ Johnson’s brief at 15 (emphasis in the original).
“Section 8-l-150(a), Ala. Code 1975, provides:
“ ‘All contracts founded in whole or in part on a gambling consideration are void. Any person who has paid any money or delivered any thing of value lost upon any game or wager may recover such money, thing, or its value by an action commenced within six months from the time of such payment or delivery.’5
“Johnson contends that the Mega-Sweeps contract is void under § 8-1-150 because, she says, this Court in Barber ‘held that, as a matter of Alabama law, playing the MegaSweeps involved the payment of consideration to gamble.’ Johnson’s brief at 17. Johnson thus concludes that the arbitration clause in the MegaSweeps contract is unenforceable because, she argues, under Alabama law ‘ “when a contract is utterly void, it does not have any existence even for the protection of one who relied and acted upon it without notice of its infirmity.” ’ Johnson’s brief at 15 (quoting Metropolitan Life Ins. Co. v. Bramlett, 224 Ala. 473, 475, 140 So. 752, 753 (1932)). JCRA, however, argues that Johnson cannot avoid arbitration by challenging the validity or legality of the MegaSweeps contract as a whole, rather than the arbitration clause itself. JCRA is correct.
“Recently, in Paragon Ltd., Inc. v. Boles, 987 So.2d 561, 567 (Ala. 2007), this Court rejected an argument similar to the one Johnson now makes.6 In that case Emily Boles sued Paragon alleging that Paragon had breached a construction contract by failing to complete the construction of a house and overcharging Boles for the work it had completed. Paragon responded by arguing ‘that the construction contract contained a valid and enforceable arbitration clause, which required that any dispute related to the contract be settled by arbitration.’ 987 So.2d at 562. Boles argued in response that, ‘under § 34-14A-14, Ala. Code 1975, Paragon [could] not maintain an action to enforce any provision of the contract, including the arbitration clause, because ... Paragon admitted [to the Alabama Home Builders Licen-sure Board] that it had engaged in the construction of Boles’s residence without holding a required license.’ Paragon, 987 So.2d at 567.
“This Court first noted in Paragon that Boles’s argument, like Johnson’s argument in the case now before us, ‘clearly attacks Paragon’s ability to enforce the contract as a whole and does not specifically attack the arbitration clause within the contract.’ 987 So.2d at 567. This Court also stated that ‘[i]t is well established that challenges to the validity of the contract as a whole and not specifically to the arbitration clause within the contract must go to the arbitrator, not a court.’ Paragon, 987 So.2d at 567; see also Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, *159 403-04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (‘Accordingly, if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the “making” of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.’ (footnotes omitted)). Relying on the United States Supreme Court decision in Buckeye Check Cashing, Inc. v. Cardegna, the same decision relied on by the trial court here, this Court in Paragon concluded that ‘the arbitration clause in the contract between Paragon and Boles is enforceable, and it is irrelevant whether Paragon’s actions render the contract as a whole void. That question is for the arbitrator to decide, not this Court.’ Paragon, 987 So.2d at 568; see also Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. at 445-46, 126 S.Ct. 1204 (‘Prima Paint and Southland [Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)] ... established] three propositions. First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract’s validity is considered by the arbitrator in the first instance. Third, this arbitration law applies in state as well as federal courts.’).8 We concluded Paragon by stating that ‘the arbitration clause is enforceable even if the contract as a whole is later found to be void.’ Paragon, 987 So.2d at 568-69.
“The case before us is closely analogous to Paragon. Johnson emphasizes that in this case ‘there is no relevant determination to be made as to the validity of the MegaSweeps contracts under § 8-l-150(a) that has not already been finally established as a matter of Alabama law in Barber [v. Jefferson County Racing Ass’n, Inc., 960 So.2d 599 (Ala. 2006)].’ Johnson’s brief at 19. She further contends that
“‘[this] Court examined the Mega-Sweeps itself and determined that, as a matter of Alabama law, the Mega-Sweeps itself was illegal gambling and, more specifically, that it involved gambling consideration. And under § 8-l~150(a), the existence of gambling consideration is the only issue in the determination of whether the Me-gaSweeps contracts were void ab ini-tio.’
“Johnson’s brief at 19 (emphasis in the original). Similarly, however, at the time Paragon asserted arbitration as a defense to litigation, it had ‘entered into a consent agreement with the. Alabama Home Builders Licensure Board in which Paragon admitted that it had engaged in the construction of Boles’s residence without holding a required license.’ Paragon, 987 So.2d at 567. Thus, the sole question under § 34-14A-14 as to whether Paragon could ‘bring or maintain any action to enforce the provisions of any contract for residential home building which he or she entered into’ was already answered—Paragon did not have the ‘license, required.’ Nevertheless, we held in Paragon that arbitration was required. Applying our decision in Paragon to the facts of this case, we conclude that, like the construction contract in Paragon, ‘the arbitration clause in the [MegaSweeps] contract between [JCRA] and [Johnson] is enforceable, and it is irrelevant whether [JCRA]’s actions render the contract as a whole void. That question is for the arbitrator to decide, not this Court.’9 Paragon, 987 So.2d at 568. Therefore the trial court did not err in determining *160 that a contract calling for arbitration exists.
[[Image here]]
“5The dissent argues that ‘[h]ad the Legislature intended that some provisions of those [gambling] contracts [addressed in § 8-1-150] not be void, it could have said, so in clear terms, but its language is all-encompassing and unmistakable.’ 1 So.3d at 971-72. The dissent continues that ‘[t]he Legislature has clearly provided that the customer’s remedy for losses in an illegal gambling activity is an action in court, not arbitration provided by a clause in a contract that is void ab initio.’ 1 So.3d at 972. However, whether the arbitration clause in the MegaSweeps contract is severable is not a question of state law, but one of federal law.
“In Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), the Supreme Court of the United States said that ‘the [Federal Arbitration Act] “create[d] a'- body of federal substantive law,”’ which [is] “‘applicable in state and federal courts.” ’ (quoting Southland Corp. v. Keating, 465 U.S. 1, 12, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)). The Supreme Court noted that it had previously ‘rejected the view that the question of “severability” was one of state law, so that if state law held the arbitration provision not to be severable a challenge to the contract as a-whole would be decided by the eourt.’ 546 U.S. at 445, 126 S.Ct. 1204. This Court is bound by decisions of the Supreme Court of the United States. See Ex parte Procom Servs., Inc., 884 So.2d 827, 834 (Ala. 2003) (‘ “ ‘This Court may rely on a decision of any federal court, but it is bound by the decisions of the United States Supreme Court.”” (quoting Weems v. Jefferson-Pilot Life Ins. Co., 663 So.2d 905, 913 (Ala. 1995), quoting in turn Ex parte Gurganus, 603 So.2d 903, 908 (Ala. 1992))); Ingram v. American Chambers Life Ins. Co., 643 So.2d 575, 577 (Ala. 1994) (‘Under Article VI of the United States Constitution, we are bound by the decisions of the-United States Supreme Court.’).
“6The Paragon decision was released after the parties to this appeal submitted their briefs.
[[Image here]]
“8The dissent argues that Buckeye Check Cashing is distinguishable from this case because in Buckeye Check Cashing a decision had not yet been made as to whether the contract at issue was, in fact, void. See Cardegna v. Buckeye Check Cashing, Inc., 894 So.2d 860, 863 (Fla. 2005) (‘In the case before us today, however, the underlying contract at issue would be rendered void from the outset if it were determined that the contract indeed violated Florida’s usury laws.’), rev’d, Buckeye Check Cashing, 546 U.S. at 445-46, 126 S.Ct. 1204.
“Justice Parker asserts that in this case ‘[t]he illegality of the MegaSweeps scheme is ... not an issue on the table for either an arbitrator or a trial court to decide’ because ‘in Barber ... this Court clearly and unanimously held that the MegaSweeps scheme constitutes illegal gambling.’ 1 So.3d at 971. This Court in Barber did address ‘the MegaSweeps scheme’ and declared it to be a gambling operation; however, neither this Court, nor the trial court, addressed in that decision what effect the decision would have on the MegaSweeps contract in this case. This case, therefore, is legally indistinguishable from Buckeye Check Cashing. Whether this particular contract is void is a decision for the arbitrator, and not for this Court or for the trial court (or, as suggested by the dis *161 sent, for the legislature, whose constitutional mandate is to pass general laws and which is‘prohibited by the separation-of-powers doctrine from deciding the effect of a statute on particular parties in particular cases). No matter how obvious we might consider the answer to a question, we cannot answer that question with legal effect absent the jurisdiction to do so. Moreover, the question whether the MegaSweeps contract may later be deemed void or merely voidable under state law is not of consequence when deciding whether the arbitration clause in that contract is severable and enforceable. See Buckeye Check Cashing, 546 U.S. at 446, 126 S.Ct. 1204 (‘In declining to apply Prima Paint [Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)]’s rule of severability, the Florida Supreme Court relied on the distinction between void and voidable contracts. ... Prima Paint makes this conclusion irrelevant. That case rejected application of state severability rules to the arbitration agreement without discussing whether the challenge at issue would have rendered the contract void or voidable.’). See also Paragon, 987 So.2d at 568 (‘Therefore, the arbitration clause in the contract between Paragon and Boles is enforceable, and it is irrelevant whether Paragon’s actions render the contract as a whole void. That question is for the arbitrator to decide, not this Court.’).
“9 The dissent argues that the Mega-Sweeps contract'is void as a whole under § 8-l-150(a), Ala. Code 1975, because it is founded on gambling' consideration and, thus, that ‘the arbitration clause is just as void as the rest of the contract.’ 1 So.3d at 971. However, as noted above, no court has made a determination as to the status of the MegaSweeps contract; thus, as the United States Supreme Court noted in Buckeye Check Cashing: ‘[Ujnless the challenge is to the arbitration clause itself, the issue of the contract’s validity is considered by the arbitrator in the first instance.’ 546 U.S. at 445-46, 126 S.Ct. 1204.”
Johnson, 1 So.3d at 963-66 (some footnotes omitted). .
Justice Parker concurred in part and dissented in part, stating, in relevant part:
“In § 8-l-150(a), Ala. Code 1975, the Legislature has clearly articulated the position of the State of Alabama on gambling: ‘All contracts founded in whole or in part on a gambling consideration are void.’ The language could hardly be more explicit. The statute declares that ‘[a]ll contracts,’ not just some, are ‘void,’ not voidable, if those contracts are founded ‘in whole or in part on a gambling consideration.’
[[Image here]]
“Even if a contract is formed between JCRA and the customer, and even if that contract does include the posted rules—including the arbitration clause— that contract is, according to § 8-1-150(a), Void.’ If, as JCRA insists, the arbitration clause is part of that (void) contract, then the arbitration clause is just as void as the rest of the contract. As distinguished from a voidable contract, a void contract is the same as a nonexistent contract. Mason v. Acceptance Loan Co., 850 So.2d 289, 295 (Ala. 2002). JCRA insists that the arbitration clause in the contract confers upon the arbitrator the authority to decide this dispute. But a void or nonexistent contract cannot confer any authority upon anyone.
“JCRA relies upon Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), for the proposition that an arbitrator, not a court, must decide a challenge to *162 the validity and enforcement of a contract containing an arbitration clause. Buckeye Check Cashing involved an allegedly illegal payday loan, but the illegality of the loan, including the rate of interest actually charged, was the disputed issue. There is no dispute in this case as to the illegality of the Mega-Sweeps scheme. Only two years ago, in Barber v. Jefferson County Racing Association, Inc., 960 So.2d 599 (Ala. 2006), this Court clearly and unanimously held that the MegaSweeps scheme constitutes illegal gambling. The illegality of the MegaSweeps scheme is therefore not an issue on the table for either an arbitrator or a trial court to decide.
“The main opinion contends that, although the Court in Barber held that the MegaSweeps scheme is an illegal gambling operation, it did not address the effect of that determination upon the legality or voidness of a MegaSweeps contract. This is a distinction with no significance. The Court need not specifically declare a gambling contract void, because the Legislature has already done so. Section 8-l-150(a) is clear: ‘All contracts founded in whole or in part on a gambling consideration are void.’ The logic is simple and unmistakable: All gambling contracts are void; Mega-Sweeps contracts are gambling contracts; therefore, MegaSweeps contracts are void.
“JCRA contends that even if the contract to purchase a MegaSweeps card is a void contract, the arbitration clause is nonetheless severable from the rest of the contract. JCRA’s position is internally inconsistent: It has strenuously argued that the posted rules are part of the MegaSweeps contract, but it now wants this Court to hold that some of the rules, but not all of the rules, are part of the contract. But § 8-l-150(a) is explicit on this point. It declares that ‘[a]ll contracts founded in whole or in part on a gambling consideration are void.’ (Emphasis added.) Had the Legislature intended that some provisions of those contracts not be void, it could have said so in clear terms, but its language is all-encompassing and unmistakable. And subsection (a) continues:
“ ‘Any person who has paid any money or delivered any thing of value lost upon any game or wager may recover such money, thing, or its value by an action commenced within six months from the time of such payment or delivery.’
“§ 8-l-150(a) (emphasis added). The Legislature has clearly provided that the customer’s remedy for losses in an illegal gambling activity is an action in court, not arbitration provided by a clause in a contract that is void ab initio.
“Nevertheless, the main opinion insists that the United States Supreme Court noted in Buckeye Check Cashing that ‘unless the challenge is to the arbitration clause itself, the issue of the contract’s validity is considered by the arbitrator in the first instance.’ 546 U.S. at 445-46, 126 S.Ct. 1204. However, Buckeye Check Cashing did not extend to a fact situation like the one here. In determining what kinds of contracts must be submitted to arbitration, the Supreme Court stated that ‘[t]here can be no doubt that “contract” as used this last time [referring to its use in Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 412-13, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967),] must include contracts that later prove to be void.’ Buckeye Check Cashing, 546 U.S. at 448, 126 S.Ct. 1204. In this case, the MegaSweeps contract has already been proven void by the legislative declaration followed by the judicial determination. I therefore believe that this case *163 can be distinguished from Buckeye Check Cashing. Finally, I note that the posted Quincy’s MegaSweeps Official Sweepstakes Rules declare themselves to be ‘[v]oid where prohibited by law.’ This declaration is found at the beginning of the rules in Paragraph 1 and appears to apply to the entire rules. Paragraph 2 provides that ‘[t]he Sweepstakes is subject to all federal, state and local laws and regulations, including without limitation Ala. Code § 8-19D-1 et seq. and Ala. Atty. Gen. Ops. 1999-28 and 2006-173.’ The rules contain no sev-erability clause or any other language that would suggest that the void-where-prohibited-by-law provision applies to anything less than the entire set of rules. If, as JCRA insists, the rules are part of the contract, then by operation of the rules themselves, the arbitration clause is void.
“Because I believe that a void and illegal contract cannot confer authority upon an arbitrator, and because I believe that the facts of this case—a ‘contract’ consisting of a card the customer receives only after paying for it, a contract that allegedly incorporates rules that declare themselves ‘[v]oid where prohibited by law,’ and a statute that not only declares such contracts void but also provides that an action in court is the customer’s remedy—present a situation not contemplated in Buckeye Check Cashing, I dissent as to that holding of the majority.”
1 So.3d at 970-72 (Parker, J., concurring in part and dissenting in part).
The “contracts” that include the arbitration clauses at issue in these eases are “contracts” arising from Hoffman’s, Howard’s, and Slayton’s playing electronic bingo at premises that are owned and operated by MCGP. At first blush, it appears that, based on this Court’s previous decision in Johnson, any question regarding the legality of the “contracts” would be a challenge to the validity of the contracts as a whole, which would be a question to be resolved by the arbitrator rather than the court. However, for the following reasons, we determine that the “contracts” are un-disputably contracts based on criminal conduct that are thus unenforceable and invalid. MCGP, therefore, cannot establish that any of these three cases involve a valid contract calling for arbitration. Accordingly, the trial court did not err when it denied the motions to compel arbitration and to dismiss.
The facts in Johnson are distinguishable from the facts in these cases. The contracts at issue in Johnson involved a game known as “MegaSweeps.” Approximately one and one-half years before its decision in the Johnson case, this Court issued its decision in Barber v. Jefferson County Racing Ass’n, Inc., 960 So.2d 599 (Ala. 2006), in which it held that the Mega-Sweeps scheme constituted illegal gambling. The majority opinion in Johnson rejected Justice Parker’s assertion that the facts in Johnson were distinguishable from the facts in Buckeye Check Cashing because the illegality of the MegaSweeps scheme had previously been decided, stating: “[Njeither this court, nor the trial court, addressed in that decision what effect the decision would have on the Mega-Sweeps contract in this case.” 1 So. 3d at 965 n.8.
However, these cases do not involve contracts based on participation in the Mega-Sweeps scheme. Rather, these cases involve alleged contracts that arose from Hoffman’s, Howard’s, and Slayton’s playing electronic bingo. At the time of our decision in Johnson, this Court had not yet addressed the legality of electronic bingo in Alabama. Now, more than eight years since this Court released it decision in *164 Johnson, this Court has been called upon to address the legality of electronic-bingo games on numerous occasions.
Most recently, in State v. $223,405.86, 203 So.3d 816 (Ala. 2016), this Court addressed the legality of electronic-bingo machines that had been seized from Victory-land. In holding that the seized electronic-bingo machines were illegal gambling machines, this Court , stated:
“Section 65 of the Alabama Constitution of 1901 prohibits ‘lotteries,’ ‘gift enterprises,’ and‘any scheme in the nature of a lottery.’ The elements of a lottery that violate' § 65 of the Constitution of .Alabama are ‘(1) a prize, (2) awarded by chance, and (3) for a consideration.’ Pepsi Cola Bottling Co. of Luverne, Inc. v. Coca-Cola Bottling Co., Andalusia, 534 So.2d 295, 296 (Ala. 1988). It is this so-called ‘anti-lottery provision’ that stands as the constitutional bar not just to what is known in contemporary parlance as. a ‘lottery,’ 'but to slot machines and, .all other forms of gambling in Alabama. In 1981, the Justices of this Court, quoting Yellow-Stone Kit v. State, 88 Ala. 196, 7 So. 338 (1890), explained that ‘“[t]he courts have shown a general disposition to bring within the term ‘lottery’. every species of gaming, involving a dispose tion.of prizes by lot or chance Opinion of the Justices No. 277, 397 So.2d 546, 547 (Ala. 1981).
“The efforts to circumvent § 65 have taken on a seemingly endless variety of imaginative forms over a long period. For over 100 years, the appellate courts of this State i have addressed cases involving efforts by gambling interests to evade this prohibition in an endless variety of new and inventive ways. See, e.g., Grimes v. State, 235 Ala. 192, 193, 178 So. 73, 73 (1937) (noting that the language of § 65 was adopted from the Alabama Constitution of 1875 and that ‘[t]he lust for profit by catering to and commercializing the gambling spirit has given rise to many ingenious devices’). As this Court explained in 2006 in responding to yet another of those attempts: ■
“ ‘The owners [of the gambling establishment] propose that they have found, and exploited, a “loophole” in the law.- ...- Alabama’s gambling law, however, is not so easily evaded. It is “ ‘the policy of the constitution and laws of Alabama [to prohibit] the vicious system, of lottery schemes and the evil practice of gaming, in all their protean shapes.’ ” ’ •
“Barber v. Jefferson Cty. Racing Ass’n, Inc., 960 So.2d 599, 614 (Ala. 2006) (quoting Opinion of the Justices No. 83, 249 Ala. 516, 517, 31 So.2d 753, 754 (1947), quoting in turn Johnson v. State, 83 Ala. 66, 67, 3 So. 790, 791 (1888) (emphasis added in Barber)).
“The latest ‘protean shape’ conceived by those who would own or operate casinos in Alabama has been electronic machines claimed to constitute the game of ‘bingo’ within the meaning of various local constitutional amendments that allow bingo in certain counties for charitable or similar purposes. Before directly examining this recent conception, it is h'elpful to consider our courts’ response to earlier' ‘protean shapes’ conceived in an effort to circumvent § 65.
“One of the earliest rejections by our courts of attempts to misuse local bingo amendments occurred a little over. 20 years ago. In City of Piedmont v. Evans, 642 So.2d 435 (Ala. 1994), this Court held that ‘instant bingo’ was a form of lottery prohibited by § 65. The Court narrowly construed the term ‘bingo’ as found in Amendment No. 508, Ala. Const. 1901 (now Local Amendments, *165 Calhoun County, § 1, Ala.- Const. 1901 (Off. Recomp.)), while citing with approval the definition of that term employed by a related municipal ordinance:
“‘ “ ‘That specific kind of game, or enterprise, commonly known as “bingo” in which prizes are awarded on the basis of designated numbers, or symbols, which are drawn, at random, by the operator of said game and which are placed by the persons playing, or participating in said game, on cards, or sheets of paper, which contain, or set out, numbered spaces, upon which said designated numbers or symbols,' may be placed by the persons playing or participating in said game.’ ” ’
“City of Piedmont, 642 So.2d at 437 (emphasis added).
“Three years later, in Foster v. State, 705 So.2d 534 (Ala. Crim. App. 1997), a unanimous Court of Criminal Appeals held in an opinion authored by then Judge Cobb that, where ‘bingo’ is authorized but not otherwise defined by local constitutional amendment, that term means nothing ‘ “other than the ordinary game of bingo.” ’ 705 So.2d at 538 (quoting Barrett v. State, 705 So.2d 529, 532 (Ala. Crim. App. 1996)). The Foster court upheld the appellant’s conviction and 12-month prison sentence for promoting gambling and possession of a gambling device where the appellant had contended that the. gambling activity he operated was ‘bingo’ within the meaning of the local bingo amendment and of a city ordinance- adopted pursuant to that amendment. The court acknowledged ‘ “this state’s strong public policy against lotteries as. expressed in § 65 of the Alabama Constitution,”’ declared that bingo is a ‘narrow exception to the prohibition of lotteries in the Alabama Constitution,’ and, accordingly, held that ‘no expression in [an] ordinance [governing the operation of bingo] can be construed to include anything other than the ordinary game of bingo,’ lest the ordinance be ‘inconsistent with the Constitution of Alabama.’ 705 So.2d at 537-38 (emphasis added); see also Barrett v. State, 705 So.2d 529 (Ala. Crim. App. 1996) (to similar effect).
“In more recent years, the strategy of misusing local bingo amendments has been renewed with additional vigor and creativity. Indeed, as noted in Part III. A., above, in just the past six years, the appellate courts of this State have rendered at least a dozen decisions engendered by the advent of so-called ‘electronic bingo.’ No less than six of those cases addressed the meaning of the simple term ‘bingo’ found in those amendments, including Amendment No. '744, which we addressed in one of" those cases. The local bingo amendments at issue in those cases were proposed and adopted following, and thus with an actual or imputed knowledge of, the holdings in Evans, Foster, and Barrett. See, e.g., Ex parte Fontaine Trailer Co., 854 So.2d 71, 83 (Ala. 2003) (‘It is an ingrained principle of statutory construction that “[t]he Legislature is presumed to be aware of existing law and judicial interpretation when it adopts [an act]. Ex parte Louisville & N.R.R., 398 So.2d 291, 296 (Ala. 1981).” ’ (quoting Carson v. City of Prichard, 709 So.2d 1199, 1206 (Ala. 1998))). Consistent with the holdings in those earlier cases, we repeatedly have made clear in our more recent cases that references to ‘bingo’ in local bingo amendments are references to the ordinary game of bingo, and not to the electronic machines at issue' in those cases.
[[Image here]]
“Based on the foregoing, there is no room for any conclusion other than that *166 which we reached in Ex parte State: The term ‘bingo’ as used in Amendment No. 744 means the traditional game of bingo as has been described by this Court. The [Barber v.] Cornerstone, [42 So.3d 65 (Ala. 2009) ], elements, as since expounded upon in Houston County [Economic Development Authority v. State, 168 So.3d 4 (Ala. 2014) ], are yet again reaffirmed. They are applicable to the term ‘bingo’ in Amendment No. 744, just as they are applicable to the use of that term in Alabama’s other local bingo amendments.
“In our opinion in Cornerstone, published over six years ago, we noted certain arguments made.by the State at that time. It is surprising, given our opinion in Cornerstone and our opinions in subsequent cases during the ensuing six years, that the following arguments remain germane today:
“ ‘ “First, there is no question that this case %volve[s] a matter of public importance.’ Chapman [v. Gooden], 974 So.2d [972], 989 [(Ala. 2007) ]. ...
“ ‘ “The issue is before the Court because [the State has] shown that there is no reasonable chance that the machines at issue could be found to be anything other than slot machines, and no reasonable chance that the computer program used to run them qualifies as the game commonly known as bingo within the meaning of Amendment 674. A ruling by this Court to that effect would surely put a practical end to this latest effort by gambling interests around the State to make a mockery of this State’s gambling laws .... They prefer to delay, continue to rake in millions during the delay with procedural maneuvers such as those they have engaged in here and in other appeals before this Court, and ultimately pin their hopes on the possibility of political changes which they believe may come with delay.”
[[Image here]]
Despite this Court’s clear, emphatic, and repeated disapproval of every artful attempt to circumvent Alabama’s anti-gambling law, see, e.g., Barber v. Jefferson County Racing Assoc., 960 So.2d 599, 614 (Ala. 2006), gambling interests, as demonstrated by this case, continue to flout those laws.” ’
“Cornerstone, 42 So.3d at 76 (quoting arguments made on behalf of the State of Alabama).
“Today’s decision is the latest, and hopefully the last, chapter in the more than six years’ worth of attempts to defy the Alabama Constitution’s ban on ‘lotteries.’ It is the latest, and hopefully the last, chapter in the ongoing saga of attempts to defy the clear and repeated holdings of this Court beginning in 2009 that electronic machines like those at issue here are not the ‘bingo’ referenced in local bingo amendments. It is the latest, and hopefully the last, chapter in the failure of some local law-enforcement officials in this State to enforce the anti-gambling laws of this State they are sworn to uphold, thereby necessitating the exercise and performance by the attorney general of the authority and duty vested in him by law, as the chief law-enforcement officer of this State, to enforce the criminal laws of this State. And finally, it is the latest, and hopefully last, instance in which it is necessary to expend public funds to seek appellate review of the meaning of the simple term ‘bingo,’ which, as reviewed above, has been declared over and over and over again by this Court. There is no longer any room for uncertainty, nor *167 .justification for continuing dispute, as to tfre meaning of that term. And certainly the need for any further expenditure of judicial resources, including the resources of this Court, to examine this issue is at an end. All that is left is for the law of his State to be enforced.”
203 So.3d at 844-45 (footnotes omitted)(some emphasis added). Thus, the state of the law regarding the illegality of electronic bingo in Alabama is well established.
Additionally, further consideration leads us to believe that we should revisit the Johnson.
The main point of the decisions relied upon in Johnson—Paragon Ltd., Inc. v. Boles, 987 So.2d 561, 567 (Ala. 2007), Prima Paint Corp. v. Flood & Conklin Mfg. Co. 388 U.S. 395, 403-04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), and Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006)—is that a challenge to a contract as a whole on the basis that the contract is void because it is based on illegal conduct by one of the parties is an issue that should be decided by the arbitrator; that arbitration provisions are severable from the remainder of the contract; and that the courts can decide only challenges to the validity of the arbitration provisions themselves. Even if the arbitration provision is severa-ble from the rest of the contract, the trial court would still determine the validity of the arbitration clause. The arbitration clause in the official bingo rules states, in pertinent part:
“As a condition of participating in any bingo game, Patron agrees that any and all disputes which cannot be resolved between the parties, claims and causes of action arising out of or connected with any bingo game, or any prizes awarded, or the determination of winners shall be resolved individually, without resort to any form of class action and exclusively by arbitration pursuant to the commercial arbitration rules of the American Arbitration ■ Association, then effective. Further, in any such dispute, under no circumstances will Patron be permitted to obtain awards for, and Patron hereby waives all rights to claim punitive, incidental, or consequential damages, or any other damages, including attorneys’ fees, out-of-pocket expenses and/or any other damages, and Patron further waives all rights to have damages multiplied or increased.”
Thus, the consideration for any agreement to arbitrate is the ability to participate in an electronic-bingo game. This Court has repeatedly held that electronic-bingo games, such as those at issue in these cases, constitute illegal gambling in Alabama. Accordingly, the arbitration provision itself would constitute a void contract because it is, at least in part, based on illegal gambling consideration. Accordingly, even if the .arbitration provision is severed from the, rest of any “contract,” the arbitration provision itself is void as a matter of law pursuant to § 8-1-150.
Moreover,' Johnson was based on this Court’s previous decision in Paragon and the United States Supreme Court’s decisions in Prima Paint and Buckeye Check Cashing. However, this case is distinguishable from Paragon, Prima Paint, and Buckeye Check Cashing because the nature of the “contracts” that include the arbitration provisions in the cases now before us'are inherently different from the nature of the contracts that were involved in those cases.
In Paragon, Emily Boles and Paragon had entered into a contract pursuant to which Paragon was to construct a house for Boles. Boles subsequently sued Paragon, alleging breach of contract, and Paragon filed a motion to compel arbitration, *168 which the trial court denied. Paragon appealed to this Court. On appeal, Boles argued that Paragon could not maintain any action to enforce the provisions' of the construction contract. Specifically, she asserted that, during a separate administrative proceeding, “Paragon entered into a consent agreement with the Alabama Home Builders Licensure Board in which Paragon admitted that it had undertaken to construct Boles’s residence without holding a required license and, thus, under § 34-14A-14, Ala. Code 1976, Paragon cannot maintain any action to enforce the provisions of the residential-home-building contract.” 987 So.2d at 564.
Prima Paint involved a consulting agreement between Prima Paint Corporation and Flood <& Conklin Manufacturing Company that included an arbitration clause. In Prima Paint, the plaintiffs did not challenge the legality of the contract or specifically challenge the arbitration clause. Rather, the plaintiffs sought rescission of the contract because they said they had been fraudulently induced to enter into the entire agreement.
In Buckeye Check Cashing, the plaintiffs had “entered into various deferred-payment transactions with petitioner Buckeye Check Cashing (Buckeye), in which they received cash in exchange for a personal check in the amount of the cash plus a finance charge.” 646 U.S. at 442. The plaintiffs brought a class-action suit “alleging that Buckeye charged usurious interest rates and that the Agreement violated various Florida lending and consumer-protection laws, rendering it criminal on its face.” 546 U.S. at 443.
Thus, the subject matter of the contracts involved in Paragon, Prima Paint, and Buckeye Check Cashing was an inherently legal activity-—a contract to build a house, a consulting agreement, and a contract to lend money. However, in each of those cases, there- were factual questions to be decided that would determine whether, the conduct of the parties had rendered those contracts void or voidable. In those cases, this Court and the United States Supreme Court held that the questions-as to whether those contracts, as a whole, were void or voidable .were to be decided by arbitrators. However, this case does not involve contracts for an inherently legal activity that might be rendered void or voidable by the actions of a party to .the contract. Rather, the entire subject matter of the “contracts” at issue in these cases is patently illegal conduct—illegal gambling. As we noted earlier, this Court has repeatedly held that the electronic-bingo games, such as the.ones in question, constitute illegal gambling. Further, § 8-1-150 specifically provides that contracts that are based in whole or in part on gambling consideration are void. In Buckeye Check Cashing, the United States Supreme Court stated, in pertinent part:
“Challenges to the validity of arbitration agreements ‘upon such grounds as exist at law or in equity for .the revocation of any contract’ can be divided into two types. One type, challenges specifically the validity of the- agreement to arbitrate. See, e.g., Southland Corp. v. Keating, 465 U.S. 1, 4—6[, 104 S.Ct. 852, 79 L.Ed.2d 1] (1984) (challenging the agreement to arbitrate- as void under California law insofar as it purported to cover claims brought under the state Franchise Investment Law). The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract’s provisions renders the whole contract .invalid. Respondents’ claim is of this second type. The crux of *169 the complaint is that the contract as a whole (including its arbitration, provision) is rendered invalid by the usurious finance charge.”
546 U.S. at 444-45 (footnote omitted; emphasis added). Additionally, in Buckeye Check Cashing, the United States Supreme Court also stated:
“It is true, as respondents assert, that the Prima Paint rule permits a court to enforce an arbitration agreement in a contract that the arbitrator later finds to be void. But it is equally true that respondents’ approach permits a court to deny effect to an arbitration provision in a contract that the court later finds to be perfectly enforceable. Prima Paint resolved this conundrum—and resolved it in favor of the separate enforceability of arbitration provisions.”
546 U.S. at 448-49 (emphasis added). However, this is not a case in which the illegality of one provision of the contract renders the whole contract invalid. Additionally, this case does not involve a situation where a court or an arbitrator could subsequently find the “contracts” in question to be perfectly enforceable. Rather, the entire subject matter of these contracts is illegal conduct. Thus, there are no factual questions to be resolved by an arbitrator or a court before a deterniination can be made as to whether the contracts in question are void or voidable. Rather, it is clear that the “contracts” are void as a matter of law. To suggest that a court should enforce any provision in a contract that is based on illegal conduct and that is void as a matter of law, particularly when the agreement to arbitrate is itself based on gambling consideration; is unconscionable. What if the contract was for different illegal conduct, for example, the sale of an illegal controlled substance such as cocaine or a murder for hire? Surely, no court would enforce any part of such a contract by requiring an arbitrator to determine whether such contracts were illegal and void. .
Based on the legal developments regarding the illegality of electronic bingo that have occurred during the years since we originally released our decision in Johnson, the procedural posture of this case is sufficiently distinguishable so that our holding in Johnson does not govern in this case. Additionally, to the extent Johnson suggests that the validity of a contract that is based solely on criminal conduct is a matter that should be submitted to an arbitrator, such holding is incorrect and is hereby overruled,
“We previously have observed that stare decisis ‘“is a golden rule, not an iron rule.” ’ Goldome Credit Corp. v. Burke, 923 So.2d 282, 292 (Ala. 2005) (quoting Ex parte Nice, 407 So.2d 874, 883 (Ala. 1981) (Jones, J., dissenting)). In those rare cases where, in retrospect, a rule announced in a previous case is not plausible, the doctrine of stare decisis does not prevent this Court’s reexamination of it.,,
“ ‘Although we have a healthy respect for the principle of stare decisis, we should not blindly continue to apply a rule of law that does not accord with what is right and just. In other words, while we accord “due regard to the principle of stare decisis,” it is also this Court’s duty “to overrule prior decisions when we are convinced beyond ... doubt that such decisions were wrong when decided or that time has [effected] such change- as to require a ehange in the law.” Beasley v. Bozeman, 294 Ala. 288, 291, 315 So.2d 570, 572 (1975) (Jones, J., concurring specially).’
“Ex parte State Farm Fire & Cas. Co., 764 So.2d 543, 545-46 (Ala. 2000) (footnote omitted). ‘As strongly as we believe in the stability of the law, we also recog *170 nize that there is merit, if not honor, in admitting prior mistakes and correcting them.’ Jackson v. City of Florence, 294 Ala. 592, 598, 320 So.2d 68, 73 (1975).”
Ex parte Vanderwall, 201 So.3d 525, 536 (Ala. 2015).
Conclusion,
Because the “contracts” containing the arbitration provisions in these cases were based on gambling consideration, they were based solely on criminal conduct, and are therefore void. Consequently, the provisions of those “contracts,” including the arbitration provisions, are void and unenforceable. Therefore, the trial court properly denied the motions to compel arbitration and to dismiss these cases. Accordingly, we affirm the trial court’s judgments.
1141273—AFFIRMED.
1141277—AFFIRMED.
1141278—AFFIRMED.
Stuart, Bolin, Parker, and Murdock, JJ., concur.
Bryan, J., concurs in the result.
Shaw, J., dissents.
Main, J., recuses himself.

. In case no. 1141273 and case no. 1141278, the complaints refer to "Macon County Grey *154 hound Park, Inc. and Macon County Greyhound Park, Inc. d/b/a Victoryland, an Alabama corporation.” We have treated the two named entities as a single corporation.

. In case no. 1141277, MCGP, McGregor, and Russell filed a joint motion to compel binding arbitration and to dismiss. McGregor' and Russell are not parties to these appeals.